IRON COMPANIES *v.* PACE.

(*Nashville.* March 3, 1891.)

I. TAXATION. *Method of revision and correction of assessments of back taxes upon appeal or complaint of tax-payer. Not repealed.*

The method provided by Acts of 1879, Ch. 79, for revision and correction of assessments of back taxes upon the appeal or complaint of the tax-payer is not repealed expressly nor by implication by the general Assessment Act of 1887, or by any other Act of a prior date;* and therefore assessments of back taxes made under the provisions of the general Assessment Act of 1887 are subject to correction and revision in the manner provided by said Act of 1879, Ch. 79.

Acts construed: Acts of 1887, Ch. 2, Sec. 24;† Acts of 1885, Ch. 1, Sec. 25; Acts of 1883, Ch. 105, Sec. 25; Acts of 1881, Ch. 171, Sec. 25.

Acts cited as amendatory of Acts of 1879, Ch. 79: Acts of 1883, Ch. 181; Acts of 1885, Ch. 23.

Case cited and approved: Shelby County *v.* Railroad, 16 Lea, 401.

2. SAME. *Same. Act of 1879, Ch. 79, applies to all back taxes.*

Although the Act of 1879, Ch. 79, applies, in terms, to assessments upon property *wholly omitted* from the original assessment, still the effect of subsequent legislation has been to extend the benefit of its provisions to tax-payers whose property has been re-assessed upon the ground that it was originally assessed upon an *inadequate valuation.*

Acts construed: Acts of 1879, Ch. 79; Acts of 1883, Ch. 181; Acts of 1885, Ch. 23.

* The general Assessment Act of 1889 (Acts of 1889, Ch. 96) does not repeal the Act of 1879, Ch. 79. (See Acts of 1889, Ch. 96, Sections 26, 86.)—REPORTER.

† Repealed expressly by Acts of 1889, Ch. 96, Sections 26, 86.—REPORTER.

NOTE.—Back tax collectors have no power, since the passage of the Act of 1887, Ch. 2, Sec. 24, which is substantially re-enacted by Acts of 1889, Ch 96, Sec. 26, to assess back taxes. *State* v. *Building and Loan Associations*, Nashville, December Term, 1890 (oral opinion).—REPORTER.

Cases cited: Franklin County v. Railroad, 12 Lea, 530, 531; State v. Railroad, 14 Lea, 58; Railroad v. Lauderdale County, 16 Lea, 691.

3. SAME. *Same. Limitation upon correction of back assessments on appeal.*

In case the tax-payer "disputes both the assessment, as to amount, and the right to tax his property," he is required by the Act of 1879, Ch. 79, not only to prosecute and perfect his appeal to the Judge or Chairman of the County Court within ten days after the original assessment is made, but he must have the re-assessment completed within that period, or the Court loses all power to make any re-assessment.

Acts construed: Acts of 1879, Ch. 79, Sec. 3.

Case cited and approved: Tomlinson v. Board of Equalization, 88 Tenn., 1.

4. SAME. *Mandamus not allowed to compel re-assessment after expiration of ten days.*

And therefore the Judge or Chairman of the County Court will not be compelled by *mandamus* to make re-assessment, in such case, after the expiration of ten days from date of the original assessment, although the appeal has been perfected within that period.

Cases cited and approved: Gillespie v. Wood, 4 Hum., 437; Johnson v. Lucas, 11 Hum., 306; Memphis Publishing Company v. Pike, 9 Heis., 704.

5. SAME. *Same. Case in judgment.*

Pursuant to Section 24, Ch. 2, Acts of 1887, Pace; Trustee, etc., assessed complainants for the years 1886, 1887, and 1888 upon omitted property, and for the year 1887 also upon property assessed originally at an inadequate valuation. Complainants, contesting both the valuation and the liability to taxes, appealed these assessments to the County Judge, as provided by Acts of 1879, Ch. 79. They perfected this appeal within ten days from date of original assessment, but continued the case before the County Judge beyond that period without obtaining re-assessment. After the expiration of the ten days, the County Judge dismissed the case for want of jurisdiction to make a re-assessment. Complainants seek, by *mandamus*, to compel a re-assessment by the County Judge.

*Held:* That the appeal lies, but that it must have been perfected and re-assessment made within ten days after the making of the original assessment, and that the County Judge lost all jurisdiction over the

Iron Companies *v.* Pace.

matter after the expiration of ten days, and could not therefore be compelled by *mandamus* to make a re-assessment after that date.

FROM HICKMAN.

Appeal from Chancery Court of Hickman County. A. J. ABERNATHY, Chancellor.

EAST & FOGG and W. P. CLARK for Iron Companies.

Attorney-general PICKLE, District Attorney-general J. L. JONES, J. B. DANIEL, and J. A. BATES for State.

CALDWELL, J. These are consolidated injunction and *mandamus* bills.

The Warner Iron Company and the Ætna Iron Company were Tennessee corporations engaged in the manufacture of iron, charcoal, and alcohol in Hickman County. June 29, 1889, J. N. Pace, Trustee of that county back assessed the two companies for the years 1886, 1887, and 1888, under Section 24, Chapter 2, of Acts of 1887. Being dissatisfied with the assessments, both companies appealed to the Chairman of the County Court on the sixth day of July following, and on the same

day obtained a continuance until the eighth of July. On the latter day they obtained a further continuance until the thirtieth of the same month, when the Chairman dismissed the appeals on the ground that he *then* had no jurisdiction to revise the action of the Trustee. Appeals were prayed and granted to the Circuit Court, where they are still pending.

After the dismissals by the Chairman and the appeals to the Circuit Court, each of the companies filed a bill in the Chancery Court against the Trustee, Chairman, and others denying its liability for the taxes assessed against it, disputing the valuation of its property, alleging the want of proper notice of the Trustee's intention to make the assessments, and that the Chairman had erroneously dismissed its appeal, and praying for injunction to restrain collection of the taxes assessed, and for *mandamus* to compel the Chairman to revise and correct the assessments. Demurrers being overruled, the bills were answered and proof taken. On final hearing the two causes were consolidated, and the relief sought was granted. Defendants appealed.

Many questions were raised in the pleadings and have been debated at the bar which are not material in the view we have taken, and, therefore, need not be further alluded to in this opinion.

We first consider the contention of defendants that there was no statute in 1889 authorizing an appeal to the Chairman of the County Court; that he, therefore, had no jurisdiction, at any time,

over the assessments in question, and was not required or permitted by law to revise the same, as complainants seek to compel him to do.

The Act of 1879, Chapter 79, constitutes all tax-collectors Assessors, and confers upon them the power and devolves upon them the duty of assessing all taxable property, "which, by mistake of law or fact, has not been assessed." After conferring this power and imposing this duty, the first section of the act further provides that if the owner admits the liability of his property to taxation, but disputes the amount of the assessment, he may have a re-valuation at any time within one month, before the Chairman of the County Court, whose decision "shall be final." The second section provides that. where the owner denies that his property is taxable, but makes no complaint of the valuation, the "collector shall submit the facts to the Comptroller as to the State tax, to the Judge or Chairman of the County Court as to the county tax, and to the Mayor of the city or town as to the municipal corporation taxes; and if by these several officers, or any one of them, he is directed to proceed to the collection of the taxes, he shall immediately and without delay obtain from any Justice of the Peace of his county a warrant, or warrants, for said taxes, and which shall be served on the owner of said property, and set for trial before some Justice of the Peace in said county, and warrants may be for the State, county, and municipal corporation taxes jointly or separately; and all

Justices of the Peace are hereby given jurisdiction to try all such' cases, no matter what the amount, and the same shall be tried without delay, with the right to appeal to either party to the Circuit Court, and the appeal shall go to the next succeeding term unless the Court is in session to which the appeal is taken, and. in that case the appeal shall be to the term being held, and shall be entered and tried at that term." The third section is as follows: "That in case the owner of the property disputes both the assessment as to amount and the right to tax his property, then he shall be allowed ten days to have a re-assessment before the Judge or Chairman of the County Court, and at the end of the ten days the tax-collector shall proceed as under the second section."

The assessments complained of in the present cases come within the *third* section, because both *the right to assess* at all 'and *the valuation* of the property are disputed; and by it the right of appeal to the Judge or Chairman of the County Court, for a re-assessment, is expressly given, though the word appeal is not used.

This Act, however, confers power to assess for the current year only, and does not authorize the tax-collector to assess and collect taxes for years anterior to that for which he has been elected and qualified. *Otis* v. *Boyd,* 8 Lea, 679; 11 Lea, 51; 12 Lea, 527; 14 Lea, 58, 59; 16 Lea, 42.

To meet this infirmity, the first section was amended by the Act of 1883, Chapter 181, so as

to include all omissions, whether "for the particular year for which the collector is acting or for any previous year or years." And by the Act of 1885, Chapter 23, the period for which the back assessments might be made, and should be made, was limited to "three years."

These amendatory Acts do not take away the right of appeal given by the Act of 1879; nor does the subsequent Act of 1887, Chapter 2, have that effect. Section 84 of the last named Act repeals certain specified Acts, and all other Acts and parts of Acts in conflict with the provisions of that Act; but the Act of 1879, Chapter 79, is not among the Acts specifically named, nor are its provisions for appeal to and revision by the Chairman or Judge of the County Court superseded by or in conflict with any part of the Act of 1887, Chapter 2. The twenty-fourth section of the latter Act, which defines the duty and prescribes the mode of making back assessments, and which it is insisted repeals the Act of 1879, does not embrace or relate to the question of appeal for reassessment in any way whatever; hence, it cannot be held to operate as a repeal by implication. The language of that section is as follows: "That should it at any time after the assessments have been made, come to the knowledge of the Chairman or Judge of the County Court, the Clerk of the County Court, the County Trustee, Sheriff, or other officer or person of any County in this State, that any person, company, firm, or corporation in

said county has not been assessed as contemplated by the provisions of this Act, or has been assessed on an inadequate amount, it shall be the duty of said Chairman or Judge, Clerk, Trustee, Sheriff, or other officer or person, on motion of the Attorney-general, to cite said person, company, firm, or corporation, their agent, attorney, or representative, to appear before the Trustee for the purpose of being assessed according to law; and said Trustee is hereby authorized and empowered to make the proper assessment against such person, firm, or corporation; and should it appear that said person, company, firm, or corporation did, in any manner, connive at or purposely evade said assessment, or did knowingly permit an inadequate assessment to be made, said Trustee shall correct said assessment, and shall add fifty per cent. to the amount of said assessment, and cause the same to be entered upon the tax-books for collection. And the Attorney-general shall be allowed, as compensation for his services, twenty per cent. of the taxes or penalty realized from said increased assessment, to be retained out of the taxes when collected." Acts of 1887, Chapter 2, Section 24.

The enactment of this section was no more a repeal of the right of appeal and revision, given by the Act of 1879, Chapter 79, than was that of Section 25 of the Act of 1881, Chapter 171; or of Section 25 of the Act of 1883, Chapter 105; or of Section 25 of the Act of 1885, Chapter 1; all of which sections of the last three Acts, like that

just quoted, provided for the back assessment of any "person, company, firm, or corporation," not assessed "as contemplated by the provisions of this Act," or "assessed on an inadequate amount."

That said Acts of 1881 and 1883 were not by the Legislature understood as repealing the Act of 1879, is evident from the fact that it was recognized as still in force by the Act of 1883, Chapter 181, which amended and enlarged its scope. Similar evidence of the continuing vitality of the Act of 1879 is found in the legislation of 1885, whereby it was again amended. Acts 1885, Chapter 23.

It was held by this Court, in 1886, that the Act of 1879, as amended by said Acts of 1883 and 1885, was *then* in full force, and that it authorized an appeal to the Chairman of the County Court from back assessments made thereunder. *Shelby County v. Mississippi & Tennessee Railroad Company*, 16 Lea, 401.

Then, by adjudication and by legislative recognition, it is shown that the Act of 1879, as amended, was in force, and the right of appeal and revision thereunder in existence up to the passage of the Act of 1887, Chapter 2; and by a consideration of the latter Act, in its language, scope, and purpose, the conclusion that it does not repeal such right, either expressly or by implication, becomes irresistible.

Hence, we hold that the right to have a reassessment by the Chairman of the County Court, as provided by the Act of 1879, did exist in 1889,

when the back assessments here complained of were made, and when the same were taken before him by appeal.

But whether that right existed as to all these assessments is a more difficult question. The Act of 1879 related alone to *omitted* property, and did not authorize the re-assessment of property which had been *inadequately* assessed. *Franklin County* v. *Railroad*, 12 Lea, 530, 531; 14 Lea, 58; 16 Lea, 691.

In the cases before us the complainants were back-assessed, under the Act of 1887, Chapter 2, Section 24, on *omitted* property, for all the years, 1886, 1887, and 1888; and on *inadequately assessed* property for the year 1887 alone.

So that the right of appeal and revision conferred by the Act of 1879 would, by the terms of the Act, apply only to a part of these assessments— those for *omitted* property, and not those for inadequately assessed property. In none of the Acts do we find any provision for a re-valuation or re-assessment by the Chairman of the County Court of property which has been, or shall be, back-assessed on account of an assessment thereof on an *inadequate valuation* in the first instance. No such provision was made in the Revenue Act of 1881, Chapter 171; or of 1883, Chapter 105; or of 1885, Chapter 1; or of 1887, Chapter 2. The twenty-fifth sections of the first three of these Acts, and the twenty-fourth section of the last one, make ample provision for the back assessment of *inadequately assessed* as well as *omitted* property, but all

of them are silent as to the revision of the back assessment made in either case.

Nor do the Acts of 1883, Chapter 181, and of 1885, Chapter 23, amendatory of the Act of 1879, provide for an appeal and revision in case of back assessment of *inadequately assessed* property; they, like the Act they amend, relate by their terms to taxation of *omitted* property only.

Nevertheless, in view of the general course of legislation on the subject of taxation, and the increased scope of back assessments by the general Revenue Acts since the passage of the Act of 1879, we think the right of appeal and revision provided by that Act may well be extended to all such back assessments as are here involved. The Legislature has manifested a purpose, for a series of years, to give the tax-payer who feels himself aggrieved, a fair opportunity to have all mistakes in the assessment of his property corrected, and to this end two systems of correction have been established. As to errors in the general assessment he is given the right of a hearing before the " Board of Equalization," which sits two weeks (Acts 1881, Chapter 171, Sections 36, 37; 1883, Chapter 105, Sections 36, 37; 1885, Chapter 1, Sections 36, 37; 1887, Chapter 2, Sections 41, 42); and as to errors in back assessments, which are generally made after that board ceases to exist, a remedy is provided by the Act of 1879, Chapter 79. At the next session of the Legislature after the passage of this Act, which related alone to

omitted property, the scope of back assessments was enlarged, and provision was made for the re-assessment of property which had been assessed at an *inadequate amount;* and a similar provision has been re-enacted by each Legislature since that time. Acts 1881, Chapter 171, Section 25; 1883, Chapter 105, Section 25; 1885, Chapter 1, Section 25; 1887, Chapter 2, Section 24.

There being already a provision for appeal to the Chairman of the County Court for the correction of mistakes in the back assessment of *omitted* property, it was not indispensable, in the extension of its benefits to those whose property might be re-assessed because *inadequately assessed* in the first instance, that there should be a formal re-enactment of that provision. When the power of back assessing was enlarged by subsequent Acts, the remedy afforded by the Act of 1879 for the revision of back assessments was correspondingly enlarged by necessary intendment. It can hardly be supposed that the Legislature ever intended to give the right of appeal from a back assessment to a tax-payer whose property had not been assessed at all in the first instance, and to deny the same right to the tax-payer whose property had been assessed at an inadequate amount in the general assessment.

Therefore, we hold that the complainants had the right of appeal to the Chairman of the County Court from all the assessments complained of in these bills, whether made on property *omitted* from

the general assessment of property in the county, or on property which had been assessed at an *inadequate* valuation.

The right of appeal and revision, either by the Board of Equalization or the Judge or Chairman of the County Court, is expressly denied in some cases; as, for instance, where a fiduciary neglects or refuses to furnish a schedule of property held by him in trust, so that an assessment may be made, it is provided that the Chairman of the County Court shall assess such property from the best information obtainable, and that his assessment, when made, shall be *conclusive.* Acts 1885, Chapter 1, Sections 34, 35; 1887, Chapter 2, Sections 34, 35.

But this is a different provision from that under which the property in these cases was back assessed; and the fact that the right of revision is expressly excluded in the one instance and not mentioned in the other justifies the inference that it was not intended to be cut off or denied in the latter.

The next question we consider is as to the time within which the appeals should have been prosecuted and re-assessments made. The words of the statute are as follows: "That in case the owner of the property disputes both the assessment as to amount and the right to tax his property, then *he shall be allowed ten days to have a reassessment* before the Judge or Chairman of the County Court, and *at the end of ten days the tax-collector shall proceed* as under the second section." Act 1879, Chapter 79, Section 3.

Clearly the re-assessment must be made, if made at all, in *ten days* after the back assessment. That is the limit of time *allowed* the complaining tax-payer in which to have any supposed errors corrected. This limit is mentioned twice in the short section. That the correction must be made in ten days is emphasized by the positive direction that "at the end of ten days the tax-collector shall proceed" to sue out a warrant for the collection of the taxes. Whether this is a sufficient time in all cases is not a question for us to determine. It is all that the Legislature has allowed, and the Courts can allow no more. Like the Board of Equalization, he, in this matter, is a special tribunal of limited duration, and at the end of the time mentioned in the statute his powers cease and determine. *Tomlinson* v. *Board of Equalization*, 4 Pickle, 1.

The action of the Chairman in dismissing the appeals of these complainants and refusing a revaluation and re-assessment, when they had failed, for thirty-one days after the back assessments were made, to point out the grounds of their complaint and furnish proof to sustain them, was correct. He had no power to make any changes or corrections after ten days from the date of the back assessments. Of this result complainants have no just ground to complain. They knew, or should have known, the law; yet they did not even appeal from the action of the Trustee and present the papers to the Chairman for seven days; and

then on their own motion two continuances were granted. They never did present *data* and proof for the correction of any errors, or ask the present action of the Chairman on the same; though he was ready, as he says, to perform his duty with respect thereto at any time within the prescribed ten days, and would have done so if requested or furnished with proper evidence.

The Chairman had no power to revise these assessments after the expiration of ten days from the time they were made; when that period of time elapsed his jurisdiction ceased, and he could not lawfully have done what the complainants here seek to compel him to do. Therefore, it is too manifest for debate that *mandamus* will not lie. When the writ was applied for, no duty to make the desired re-assessments rested upon the Chairman, and he was utterly without power to take any lawful action with respect thereto. It would be unreasonable for the Chancellor to undertake by *mandamus* to compel him to do a thing which it was not at the time his duty to do, and which, when done, could have no legal efficacy. Jurisdiction which has terminated by lapse of time, or otherwise, can no more be revived by *mandamus* than it can be conferred by that means in the first instance.

To justify the issuance of this writ to compel the performance of a particular act, it must be made to appear not only that performance has been demanded and refused, but also, and primarily,

46—5 P

that the duty is specially enjoined upon the defendant by 'the positive requirement of the law. 14 Am. & Eng. Ency. of Law, 99, 105, 106; 139, 140; High's Extraordinary Legal Remedies, Secs. 7, 9, 13, 14, 32, 37, 41; Moses on Mandamus, 19, 58, 204; 4 Hum., 437; 11 Hum., 306; 9 Heis., 704; History of a Lawsuit (Martin's Ed.), Sec. 514; 3 Meigs Dig. (Milliken's Ed.), Sec. 1951.

With respect to the merits of the assessments complained of we make no decision, but merely suggest that any errors which may have been committed by the Trustee were probably the unavoidable result of manifest evasions on the part of complainants, for which he might well have added the statutory penalty of fifty per cent., but generously omitted to do so.

Reverse the decree, dissolve the injunctions, and dismiss the bills at the cost of complainants.