IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1889.

TOMLINSON *v.* BOARD OF EQUALIZATION.

(*Knoxville.* October 12, 1889.)

1. TAXATION. *Assessment. Proceedings of Board of Equalization not reviewed by certiorari, when.*

Action of County Board of Equalization determining taxable value of property, being final by express provisions of Assessment Act of 1887 and not subject to appeal, cannot be reviewed by writ of *certiorari*, at suit of a tax-payer, where the Board has not, with reference to his assessment, exceeded its jurisdiction or acted illegally within the meaning of the statute allowing *certiorari* "where no appeal is given."

Act cited: Acts 1887, Ch. 2, §42. (See Acts 1889, Ch. 96, §43.)

Code cited: §§ 3838, 3839 (M. & V.); §§ 3123, 3124 (T. & S.).

Cases cited and approved: Wade *v.* Murray, 2 Sneed, 50; W. A. Knight, *ex parte*, 3 Lea, 401.

1 P

Tomlinson *v.* Board of Equalization.

2. SAME. *Same. Refusal of Board to hear evidence not sufficient cause for certiorari.*

Refusal of County Board of Equalization to examine witnesses offered on behalf of a tax-payer complaining of excessive valuation does not constitute sufficient cause for granting writ of *certiorari* under provisions of Assessment Act of 1887. The Board has unlimited discretion, under that Act, in the matter of hearing evidence.

Act construed: Acts 1887, Ch. 2, § 42. (See Acts 1889, Ch. 96, § 43.)

Code construed: §§ 3838, 3839 (M. & V.); §§ 3123, 3124 (T. & S.).

3. SAME. *Same. Appeal from action of Board does not lie.*

Appeal does not lie at instance of tax-payer from action of County Board of Equalization determining taxable value of his property.

Act construed: Acts 1887, Ch. 2, § 42.

Cases cited and approved: Wade *v.* Murray, 2 Sneed, 50; W. A. Knight, *ex parte,* 3 Lea, 401.

4. CASE IN JUDGMENT.

Tomlinson's property was assessed for taxation by the Assessor of Grainger County for the year 1887 at $70,000. He appeared before the County Board of Equalization and complained that the valuation was too high by $30,000, and offered three witnesses in support of his contention. The Board refused to examine these witnesses or to summon others, and declined to reduce the valuation. The Board refused to sign bill of exceptions or to grant appeal. Tomlinson then sought to review the Board's action by writs of *certiorari* and *supersedeas.*

*Held:* That the Board's action could not be reviewed by appeal or writ of *certiorari,* and that its proceedings were legal.

---

FROM GRAINGER.

---

Appeal in error from Circuit Court of Grainger County. W. R. HICKS, J.

J. T. & J. K. SHIELDS for Tomlinson.

Attorney-general PICKLE and A. S. TATE for Board.

LURTON, J.   The petitioner ·applied for and obtained writs of *certiorari* and *supersedeas*.   Upon motion, at the following term of the Circuit Court, his petition was dismissed.   His complaint is that the Tax Assessor of Grainger County has placed an excessive tax upon three parcels of land owned by him.   He alleges that he made complaint before the Board of Equalization that his assessment was excessive, and produced and ` sought permission to examine witnesses to support his complaint; that the Board refused to allow him to examine these witnesses, or to grant him a subpœna for others that he proposed to bring before them; and that they adopted and approved the valuation fixed by the Assessor.   The petition shows the ground upon which the Board refused to hear the witnesses, in that it states that they ruled that " a complaining tax-payer had no right, under the law in such cases, to introduce evidence as to the value of his property claimed to be excessively assessed, or ·the Board any authority to hear and consider any evidence upon the subject, unless in the judgment of the Board justice demands that it should hear evidence, and then only such as the Board might see fit to call itself in its discretion."

Petitioner then alleges that he prepared a bill of exceptions, which the Board refused to sign, and prayed an appeal to the Circuit Court, which

was refused. What relief can petitioner obtain under a writ of *certiorari* upon these facts? The duties and powers of the Board of Equalization are defined in Section 42 of the Assessment Act, passed March 25, 1887. It is as follows:

"That said Board of Equalization shall carefully examine and compare and equalize said assessments, and shall eliminate from the lists thereof all property exempt under this Act; and they are hereby empowered to hear and adjust complaints from any party feeling aggrieved on account of excessive assessments when in their judgment, justice demands it, and to correct any and all errors arising from clerical mistakes, or otherwise; and the corrections made, if any, shall be entered upon the assessment book, without in any way altering the assessment lists, *and the action of this Board as to valuation shall be final;* and all complaints in this regard are hereby required to be made and acted upon by this Board during its session, which shall be from the first Monday to the third Monday in June. *If complaint made is based on excessive values, said Board shall have the right to summon before them witnesses who shall be disinterested freeholders; and the sworn testimony of three such witnesses concerning same will be sufficient evidence upon which such Board may act.*" The italics are ours.

It may be distinctly seen, from the plain words of the Act, that the legislative intention was that there should be no appeal or review of the action of this Board upon the subject of valuations where

it has acted upon a complaint. The law-maker has in so many words declared that its action in this regard *"shall be final."* Where no right of appeal is given by the statute in express words or by necessary implication, an appeal will not lie, and it was therefore not error in the Board to refuse the appeal prayed for. *Wade* v. *Murray*, 2 Sneed, 50; *W. A. Knight, ex parte*, 3 Lea, 401.

But it is insisted that, where no appeal lies, the writ of *certiorari* may be used in lieu of or as a substitute for an appeal. Art. VI., Sec. 10, of the State Constitution provides that: "The Judges or Justices of inferior courts of law and equity shall have power, in civil cases, to issue writs of *certiorari* to remove any cause, or the transcript of the record thereof, from any inferior jurisdiction into such court of law on *sufficient cause,* supported by oath or affirmation."

What is "sufficient cause" must be defined by either statute or judicial decision. Judicial decision has established that where the law gives an appeal, and the party is deprived of it without any fault or negligence on his part, that is "sufficient cause," if he shows in addition to it a meritorious case. History of a Lawsuit, Sec. 655 (old Ed.). But in the case before us the law gave no appeal. Hence the writ will not lie in lieu of or as a substitute for an appeal. But will it lie under any of the statutory definitions of "sufficient cause?" Code, § 3123, is as follows: "The writ of *certiorari* may be granted whenever authorized by law, and also

in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when in the judgment of the Court there is no other plain, speedy, or adequate remedy."

By the succeeding section it is declared that the writ of *certiorari* lies in the following cases: "On suggestion of diminution; where no appeal is given; as a substitute for appeal; instead of *audita querela;* instead of writ of error." This is a case which learned counsel contend comes under the provision for the writ in the section last quoted—"where no appeal is given." It is too plain for argument that if the writ cannot lie under this provision it will not under any of the other cases named in the statute. These two sections must be construed together. The statutory ground is, that the writ of *certiorari* will lie upon "sufficient cause" shown, "where no appeal is given," where "an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when in the judgment of the Court there is no other plain, speedy, or adequate remedy." Does petitioner present such a case?

Waiving for the present any consideration of the question as to whether a Board of Equalization under our Act of 1887 is a judicial tribunal, or whether, in regard to its action upon a complaint of an excessive assessment, it is a Board "exercising judicial functions," we will first undertake to ascer-

tain whether, if we assume it to have been in the exercise of "judicial functions" in the matter complained of, it has in any way "exceeded its jurisdiction," or, in the language of the statute, was "acting illegally." The complaint made in the petition is that it refused to hear witnesses, offered by the complainant in support of his complaint as to an excessive assessment as to valuation. In this did they "exceed their jurisdiction," or "act illegally?" To determine this we must not only consider the language of the Act defining their duties, but consider the general nature and scope of the powers conferred upon them. They are styled a "Board of Equalization." They are charged primarily with the duty of "examining" and "*equalizing*" the assessments. This duty they are expected most manifestly to perform, not upon testimony, but upon a "comparing" of the assessments in one district, or neighborhood, with another—one piece of property with the assessment upon another of equal value. Clearly this is to be done upon their own knowledge of the comparative valuations; and the end to be reached is an equalization, whereby discriminations in favor of one or against another are to be corrected. In addition to this, they are to correct mistakes made by the Assessor, and eliminate from the list property exempt under the law from assessment.

Finally, they are empowered to "hear and adjust complaints from any party feeling aggrieved on account of excessive taxation, when in their

judgment justice demands it." How are they to "hear and adjust" such complaints? Petitioner's contention is that they must hear witnesses produced by him; that he has a right to examine such witnesses, and cross-examine such as are produced against him. In other words, that the Act contemplates a regular trial according to the ordinary course of law, and a decision according to the weight of the proof. We have seen that with reference to the primary duty of the Board—that of equalizing assessments—the Act contemplates no issue of fact or hearing of evidence, but that the equalization is to be brought about by a comparison of assessments, and the knowledge they have of the relative values of different pieces of property. Can the law contemplate any very different method of correcting an excessive assessment? The knowledge of relative values, of comparative values, which they have as citizens and freeholders, and which they obtain from an examination and comparison of the assessment lists, will, in the vast majority of cases, enable them to act justly upon the complaint. But cases may occur where these means are, in their judgment, unsatisfactory. In such case the Act declares that the "*Board shall have the right* to summon before them witnesses who shall be disinterested freeholders, and the sworn testimony of three such witnesses concerning same will be sufficient evidence upon which such Board may act." The "*Board shall have the right*" to summon before them disinterested freeholders is

Tomlinson *v.* Board of Equalization.

the language of the Act. Does this power conferred make it their duty to either hear witnesses brought by the party making complaint, or require them in all cases to summon witnesses upon such complaint being made; or is the hearing of witnesses a matter wholly in their discretion? We think the statute means no more than it plainly declares.

To hold that it was their duty to permit the examination of witnesses offered by a complainant would imply a duty to the State and County to hear and examine witnesses to sustain the assessment. All this would imply a trial and a judgment upon weight of proof. The question of valuation is altogether a matter of opinion. Upon questions of opinion the greatest diversity may be expected. The sessions of this Board terminate in two weeks, and at the end of that time they are required to return the assessment lists and their corrections to the Clerk of the County Court. In populous counties the assessments reach into the thousands. That each tax-payer should have the right to come with his witnesses, and have them heard and be heard by counsel, would result in such delay and embarrassment as to amount to a great public peril with regard to the assessment of the public revenues. No legislative body could have seriously contemplated such a tribunal to determine a mere question of an excessive valuation for purposes of assessment. Occasional instances of excessive assessments may occur, but they had better

be borne than that such a Court should be created
to settle them.    The tax-payer in the first instance
may make his representation to the Assessor.    If
he over assesses him he may carry the matter to
a board of disinterested freeholders acting under
oath.    If they, upon their own knowledge, agree
with the Assessor, and upon a "comparison" find
no case for a reduction for purpose of equaliza-
tion, the chances are that the assessment is not far
wrong.    If he cannot induce the Board to think
that it is a case where they ought, for their own
enlightenment, exercise the power they have to
summon witnesses of their own selection, he must
submit.

The Board was not "exceeding its jurisdiction"
or "acting illegally" in refusing to hear the wit-
nesses offered by petitioner, and it had a right to re-
fuse to summon witnesses of its own selection if they
deemed that justice did not demand evidence from
witnesses.    The next contention is that petitioner
has the right to have the writ of *certiorari*, to the
end that he may have the matter heard or retried
upon the merits.    This is based upon the proposi-
tion that if the Board had heard witnesses, or had
decided the matter without witnesses, and upon
their own knowledge, or upon a comparison of the
assessment complained of with other assessments,
that in any event their action in adopting and ap-
proving the assessment is a judgment, which they are
entitled to have reviewed upon the merits; and
that, inasmuch as it is a case where no appeal lies,

for this reason the writ of *certiorari* lies to re-
view and retry the matter upon its merits. The
answer to this is, that it is only where the writ
of *certiorari* lies as a substitute for an appeal or
a writ of error, or possibly instead of *audita
querela,* that the writ will operate to give to the
petitioner a new trial upon the merits. In the
first place, the Act, as we have before seen, ex-
pressly declares that the action of the Board shall
be final. The law-maker did not intend that its
judgment on the merits should be subject to re-
view. In all such cases the writ will not lie to
review the matter upon the merits. Such contro-
versies must be finally settled by some means. The
judgment of a disinterested Board of freeholders
upon a mere matter of opinion as to valuations
for taxation is as likely to be right as that of any
court. Says Judge Cooley upon this question: "As
a general rule, a tax cannot depend for its validity
upon the ability to justify it to the satisfaction of
a court or jury. Value is matter of opinion, and
when the law has provided officers upon whom
the duty is imposed to make valuation, it is the
opinion of these officers to which the interests of
the parties are referred. The Court cannot sit in
judgment upon their errors, nor substitute their
opinions for the conclusions the officers of the law
have reached." Cooley on Taxation 157, (1st Ed.).

Every interest of the State alike demands that
such questions shall be settled cheaply and speedily.
When an act creating a special tribunal, even one

exercising judicial functions, gives power and authority to settle particular grievances such as this, and either expressly or by plain implication declares that the judgment of such special tribunal shall be final, and it confines itself within its jurisdiction, and does not " act illegally," the writ of *certiorari* will not lie to review its action upon the merits. This question has been settled in this State since the case of *Wade* v. *Murray*, 2 Sneed, 50. That case was this: Under the Act of 1854, Ch. 32, contested elections of Judges and Attorneys-general were to be heard and determined by a special tribunal, consisting of the Chancellor of the division within which the contest arose. The jurisdiction was conferred upon the Chancellor, and not upon the Chancery Court. The Act prescribed how, when, and where he should hear the contest. No provision was made for an appeal or writ of error. Judge McKinney delivered the opinion of the Court, and held, first, that no appeal or writ of error would lie from the judgment of the Chancellor determining such a contest; second, that no writ of *certiorari* would lie as a substitute for a writ of error, and that when the law intended the decision to be final and conclusive there could be no review of the judgment in any way whatever. The learned Judge, however, qualifies his decision, as we think properly, when he says that " we do not mean to say, however, that the writ of *certiorari* might not be resorted to for some purposes in a case like the present. We think it might.

Tomlinson *v.* Board of Equalization.

In a case involving a question as to the legal competency of the Judge, or showing such a substantial departure from the course of proceedings prescribed in the statute as would render the proceedings void, the *certiorari* would be the proper remedy." 2 Sneed, 57. The learned author of the History of a Lawsuit, in commenting on the doctrine now under discussion, says that "the law, as stated in *Wade* v. *Murray,* precluding all inquiry into the correctness of the judgment upon the merits of the case, may be considered as settled." "This has been thought by some to operate as an abridgment of the right to a *certiorari,* which is secured by the Constitution. But the language of the Constitution secures the benefit of the writ 'on sufficient cause,' and what is sufficient cause is not defined by the Constitution. It must, therefore, be defined by the Legislature or the Courts. When the Legislature has created an inferior jurisdiction, and has given no appeal from its decisions, it must be evident that it did not intend them to be revised upon the merits of the case. It is equally evident that it intended the jurisdiction to keep itself within the prescribed limits and to proceed in a legal manner; and it is only when it transgresses in these respects that 'sufficient cause' exists for a *certiorari.*" Caruther's History of a Lawsuit, Secs. 750 and 751 (old Ed.).

*Wade* v. *Murray* has been followed in the case of *Knight ex parte,* 3 Lea, 401, opinion by Judge McFarland, Judges Turney and Freeman dissenting.

That this writ will not lie to review the judg-
ment of a Board of Assessors or a Board of
Equalization upon the merits, where the controversy
is as to the valuation, has been repeatedly settled
in other States. Judge Cooley, in his elaborate
work on taxation, in speaking of the office of this
writ, says: "It will not lie to review any merely
discretionary action of any tribunal, nor is it within
the proper scope of the writ to review the decis-
ions of inferior tribunals upon the merits. The
Court awarding it, therefore, will not look into the
evidence on which the inferior tribunal may have
acted, except so far as may be necessary to the
determination of any jurisdictional question that
may depend upon it." Again he says: "The writ
does not lie to the collector of taxes, or any other
mere ministerial officer, to review either his action
or any of the prior actions on which his own was
based;" and "that assessments cannot be revised
and set aside on this writ on the ground merely
that they are excessive or unequal." Cooley on
Taxation, 531–533 (1st Ed.). See also *Shelby County*
v. *Railroad Company*, 16 Lea, 412. We have been
referred to Mr. Burroughs on Taxation, who seems
to entertain the opinion that a writ of *certiorari*
will lie to correct an excessive assessment, although
the Assessor or Board of Equalization have not
"acted illegally" or "exceeded their jurisdiction."
This is a total misconception of the "sufficient
cause" upon which such writ is authorized either
at common law or under our Constitution. It is

certainly not in accord with our cases, and is in direct conflict with the views of Judge Cooley, as quoted above.

The judgment of the Circuit Court dismissing the petition is affirmed with costs.

DISSENTING OPINION.

TURNEY, C. J., delivered the following dissenting opinion:

By an Act passed March 25, 1887, creating a Board of Equalization in the assessment of taxes, it is provided in Section 42 " that said Board of Equalization shall carefully examine and compare and equalize said assessments, and shall eliminate from the lists thereof all property exempt under this Act; and they are hereby empowered to hear and adjust complaints from any party feeling aggrieved on account of excessive assessments when, in their judgment, justice demands it, and to correct any and all errors arising from clerical mistakes or otherwise; and the corrections made, if any, shall be entered upon the assessment book without in any way altering the assessment lists, and the action of this Board as to valuation shall be final; and all complaints in this regard are hereby required to be made and acted upon by this Board during its session, which shall be from the first Monday to the third Monday in June. If com-

plaint made is based on excessive values, said Board shall have the right to summon before them witnesses who shall be disinterested freeholders, and the sworn testimony of three such witnesses concerning same will be sufficient evidence upon which such Board may act."

The Tax Assessor for Grainger County assessed three separate tracts of land of petitioner at seventy thousand dollars. On a day fixed for hearing his complaint petitioner appeared before the Board and filed a sworn exception to the assessment, alleging that it was thirty thousand dollars in excess of the value of the property. He offered to sustain his complaint by three competent witnesses. The Board refused to hear his proof, holding that petitioner had no right to introduce proof or be heard upon the subject of his complaint.

Petitioner prepared and tendered a bill of exceptions, which the Board refused to sign. He then prayed an appeal to the Circuit Court, which was refused.

The prayer of the petition is that said Board be restrained from returning said excessive assessment; that the matter be brought into the Circuit Court; that the property be lawfully and justly assessed, or that said erroneous and unjust assessment be reviewed and corrected.

The Board moved the Court to dismiss the petition, because the statute provided the action of the Board should be final, and that petitioner's remedy to compel the examination of witnesses

was by mandamus. Upon the first ground, if the Act intended to prohibit and cut off appeals to the Courts for relief, it would be void as violative of Article I., Section 17, of the Constitution, ordaining that "all Courts shall be open, and every man, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay," and of Section 8, same Article, "that no man shall be deprived of his property but by the judgment of his peers or the law of the land."

Every man has the right to be heard before he can be lawfully condemned in person or property.

Is the writ of *certiorari* a proper remedy under this petition?

By § 3838 of Code (M. & V.) it is provided: "The writ of *certiorari* may be granted whenever authorized by law, and also in all cases when an inferior tribunal, *board*, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the Court, there is no other plain, speedy, or adequate remedy."

By § 3839 "*certiorari* lies when no appeal is given."

For the purposes of the questions, we treat the petition as true. We have a Board exercising judicial functions, exceeding the jurisdiction conferred in its refusal to hear proof as directed by the Act, and therefore acting illegally.

No appeal is given by the Act, and for that

2 P

reason an appeal was refused. There is no other plain, speedy, or adequate remedy. The action of the Board was on the eleventh day of June, and its existence expired, by limitation of law, on Saturday before the third Monday in June. It was a tribunal of only two weeks' duration. The first term of the Court, after its action, was fourth Monday in August, when there would have been no tribunal, board, or officer upon whom a peremptory mandamus could have operated, and the petitioner would have been without remedy, either plain, speedy, or adequate.

In *Dodd* v. *Weaver*, 2 Sneed, 672, it is said: "If there be no appeal, then the *certiorari*, which is a constitutional writ, is a proper remedy by which any injurious irregularity in the proceeding may be corrected or a trial *de novo* had. The maxim of the law is that there is no wrong without a remedy, and it is a particular rule that a *certiorari* will lie to all inferior jurisdictions the proceedings of which cannot be corrected by writ of error, to remove their proceedings into the Superior Court, to be there affirmed or quashed, or otherwise corrected as law and justice shall require." In *Sanders* v. *Russell*, 10 Lea, 295, this Court holds: "The writ of *certiorari* is in this State a constitutional writ, and has always had a more extended application than in England, and been used for purposes unknown to the common law. It is the universal method by which the Circuit Courts exercise control over all inferior jurisdictions, however

constituted and whatever may be their course of proceeding."

In Burroughs on Taxation, 242, 243, it is said: "In *Swift* v. *Poughkeepie,* to determine the validity of a tax on bank shares, where the bank claimed an exemption to the extent of its capital invested in United States bonds, and finally to examine into the action of Assessors so as to look into the evidence before the Assessors and correct mere questions of valuation, the Court say: '·It has been finally settled that a common law *certiorari* to review the proceedings of Assessors brings up the merits as well as questions of jurisdiction and regularity, and that where Assessors have neither exceeded their powers nor been irregular in exercising them, the Court will still, upon the facts appearing in the returns, examine and correct their decisions if erroneous.' The cases in other States sustain those in New York as to the functions of the *certiorari.*"

To the argument that if this petition is allowed to prevail it will multiply suits, and thereby cripple the State in the collection of taxes, it is sufficient to say that the State is ordinarily as much bound by the Constitution and laws thereunder as the citizen, and it is its duty to protect and not oppress the citizen. While every legitimate aid will be given to the State in collecting its revenue, the Courts must see that their aid is authorized, remembering the State is the creature and not the creator of the Constitution.

The argument of inconvenience to the State is, to my mind, a begging of the question. The State has set in motion machinery shown by the petition in this case to be oppressive, and requires it to complete its work and cease to exist in the space of two weeks, and now asks to say: " The shortness of the life of an institution of my own creation will, if its acts be allowed to be reviewed, imperil my revenues; I must therefore be permitted to take advantage of my own wrong." Recurring to the Act, I do not see that it requires such interpretation. It requires the Board to *hear* and *adjust* complaints from any party feeling aggrieved. How hear? How adjust? Why, by summoning " before it witnesses who shall be disinterested freeholders; and the testimony of three such witnesses will be sufficient evidence upon which said Board may act." The language that it " shall have the right to summon such witnesses" means that it shall be its duty to do so on the complaint made. This is the only way in which the complaint could be heard and adjusted. The argument that it may exercise the right, and that it is merely a right unembarrassed by a duty, and determine the question of excessiveness conclusively, presumes that the Board is acquainted with all lands in their county, a presumption that cannot hold good in any one county in the State. The objection that a trial will result if witnesses are introduced, is answered by the statute providing for their introduction and

examination. The trial naturally comes of the power conferred and duty imposed upon the Board by the words of the Act. The petition only seeks to have the duties defined by the Act enforced. It sets out the grounds and suggests the names of witnesses of the character specified by the law. This was refused.

If the action of the Board is to be final, it can only be so after the law has been obeyed, which cannot be done under a rule that the Board may, in its arbitrary discretion, as was done here, reject a main provision. The Board is a judicial tribunal to try questions of fact and of law. In this case it passed alone upon that of law, its construction of the statute holding that petitioner had no right to introduce proof or be heard upon the subject of his complaint. It construed the law for itself and by itself. It said to petitioner: "The law does not mean what you claim it to mean. We are the sole and exclusive judges of the meaning of the words of the Act, and of the intention of the Legislature in the employment of these words." Now, if the Legislature may confer such judicial functions on this Board, I can see no reason why it may not say that Magistrates, County, Circuit, and Chancery, and "such other inferior" Courts as it may establish, shall have exclusive jurisdiction in such matters as the Legislature may name, and their respective actions, judgments, and decrees "shall be final." The Board of Equalization is a

Court authorized by Article VI., Section 1, of the Constitution, and upon which the Legislature had no power to confer a jurisdiction to make its action final. Such legislation contravenes the spirit and theory of our State government.