**POLK COUNTY, Tennessee, et al., Complainants-Appellees,**

v.

**The STATE BOARD OF EQUALIZATION of the State of Tennessee and Cities Service Co., Defendants-Appellants.**

Court of Appeals of Tennessee, Middle Section.*

March 24, 1972.

---

* No application was made to the Supreme Court for writ of certiorari, however a committee of the Court of Appeals recommended the publication of this opinion.

Gullett, Steel, Sanford, Robinson & Merritt, Nashville, for complainants-appellees.

Milton Rice, Nashville, for State Board of Equalization.

Bass, Berry & Sims, Nashville, for Cities Service Co.

## OPINION

TODD, Judge.

This appeal involves a petition for certiorari and supersedeas from the action of the State Board of Equalization in respect to the properties of Cities Service Company in Polk County, Tennessee. The Chancellor invalidated the decision of the State Board, and the property owner has appealed.

The properties of Cities Service Company were assessed for taxation for the year, 1970, at $22,500,000.00. Upon appeal to the County Board of Equalization of Polk County, the assessment was sustained. Upon appeal by Cities Service Company, the State Board of Equalization certified a reduction of the subject assessment to $13,627,800.00. This judicial proceeding was commenced on December 31, 1970, when a petition for certiorari and supersedeas was filed by Polk County, Tennessee, Keith Ballew, individually, as a citizen and taxpayer and as County Chairman of the Polk County Quarterly Court, and James L. Ellis, individually, as a citizen and taxpayer and as Tax Assessor of Polk County, Tennessee. Said petition named as respondents the State Board of Equalization and Cities Service Company and, as amended, sought relief from the action of

the State Board upon the following grounds:

1. The action of the State Board was not taken by a lawful quorum (four members) in that only four of the seven-man board were present at the beginning of the hearing; that one of said four did not remain during the entire hearing; that another of the four did not attend a subsequent hearing and did not sign the final order which was signed by a member who heard none of the evidence. As a result, of the four members who signed the final order, only two participated fully in hearing evidence, one heard only part of the evidence, and one heard no evidence at all.

2. The action of the State Board was not certified as required by law because said action was taken and certified after the October 1 deadline prescribed by § 67-829, T.C.A.

3. The certificate of the State Board shows that its action was predicated upon a recommendation of a hearing officer.

4. The State Board did not review the evidence in reaching its conclusions nor reach an independent judgment of its own.

5. There was no substantial evidence to support the conclusion reached by the State Board.

The defendants moved to quash and dismiss and answered to the merits.

The final decree of the Chancellor overruled the respondents' motion to quash and dismiss, held that the action of the State Board was invalid for lack of a quorum, pretermitted other grounds of the petition, and set aside the action of the State Board.

The first assignment of error by Cities Service Company is as follows:

"The Chancellor erred in overruling the motion of the defendant Cities Service Company to quash the writ and dismiss the petition of the complainant."

The gravamen of the foregoing assignment is stated in the brief of Cities Service as follows:

"1. *The complainants did not have a right to a hearing before the State Board of Equalization, therefore, cannot complain as to any irregularity.*

It is the position of the appellant that the complainants were not parties before the State Board and, therefore, were not authorized by statute to be parties before the Chancery Court of Davidson County."

§ 67-821, T.C.A., provides that complaint may be made to the State Board by

"any taxpayer, or any owner of property subject to taxation in the state . . . on the ground that other property than his own has been assessed at less than the actual cash value thereof . . . ."

However, it does not appear from this record that any complaint was made to the State Board by anyone except Cities Service Company. Indeed, there was no cause for anyone to complain to the State Board. The assessment by the County Assessor and the County Board of Equalization was obviously satisfactory to all concerned except Cities Service Company.

Appellant insists that the right of judicial review is not conferred upon complainants by statute, hence no such right exists. No authority is cited to support this proposition, however it is pointed out that, inasmuch as the statute, supra, makes no provision for appeal to the State Board by a county or its officials, then, by analogy, (it is insisted) it must be presumed that the legislative intent was that counties and their officials should have no judicial recourse in event of unlawful or invalid action of the State Board. § 67-823, T.C.A., provides as follows:

"*67-823. Jurisdiction of state board— Finality of decisions.*—Said state board

shall have jurisdiction of, and it shall be its duty, to equalize during its session the assessments of all properties in the state, including any appeals which may be filed by merchants from the action of the commissioner of finance and taxation. The action of the state board shall be final and conclusive as to all matters passed upon by said board, *subject to judicial review*; and such taxes shall be collected upon the valuation found and fixed by said board. (Emphasis supplied.)

It would be a strained and unnatural interpretation of the foregoing statute to hold that it grants judicial review to one side but not the other side of a controversy.

The writ of certiorari is preserved in the Constitution of Tennessee in Article 6, § 10, as follows:

"*Sec. 10. Certiorari.*—The Judges or Justices of the Inferior Courts of Law and Equity, shall have power in all civil cases, to issue writs of certiorari to remove any cause or the transcript of the record thereof, from any inferior jurisdiction, into such court of law, on sufficient cause supported by oath or affirmation."

and by statute as follows:

"*27–801. Constitutional basis.*—The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

"*27–802. Cases in which writ lies.*—Certiorari lies: (1) On suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal; (4) instead of audita querela; (5) instead of writ of error."

The writ of certiorari is in this State a constitutional writ, and has always had a more extended application than in England, and has been used for purposes unknown to the common law. Saunders v. Russell, 78 Tenn. (10 Lea) 293 (1882); Tomlinson v. Board of Equalization, 88 Tenn. 1, 12 S.W. 414 (1889).

The writ of certiorari is of the highest utility and importance in curbing the excess of jurisdiction, and in correcting mistakes and errors. Durham v. United States, 5 Tenn. (4 Haywood) 69.

Certiorari at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error, but bringing up the entire record in order to determine whether there had been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirement of the law. Conners v. Knoxville, 136 Tenn. 428, 189 S.W. 870 (1916); Clements v. Roberts, 144 Tenn. 129, 230 S.W. 30 (1916).

Under the Constitution and the law (Codes §§ 27–801, 27–804), and before the writ of certiorari can be invoked or awarded, there must be a "cause"; and the inferior jurisdiction, whether a tribunal, board, or officer, must have exercised judicial functions; and "sufficient cause" must be shown for the removal. Bouldin v. Lockhart, 62 Tenn. 262 (1873).

Sufficient cause for a writ of certiorari to revise or review an assessment valuation of property for taxes, made final by statute, only exists where the assessors or boards transgress the jurisdictional limits or act illegally. Tomlinson v. Board of Equalization, supra.

See also State ex rel. Vance v. Dixie Portland Cement Co., 151 Tenn. 53, 267 S.W. 595 (1924); Briscoe v. McMillan, 117 Tenn. 115, 100 S.W. 111 (1906).

The insistence that no person or entity can be "aggrieved" by the action of a tribunal unless he or it was a party to the

proceeding is difficult to reconcile with orderly justice. One of the offices of the writ of certiorari is to restrain illegal and arbitrary exercise of power. What more illegal or arbitrary action could be conceived than the rendition of illegal orders against the interests of persons without any opportunity to defend or protest? So far as can be found, this insistence has never been presented, or sustained in any reported case. It is contrary to the fundamental concepts of justice under our system of law.

This certiorari action was brought by Polk County (a municipal corporation with a real, monetary interest in the action of the State Board), and the County Judge and Tax Assessor of Polk County, both of whom have an official interest in said actions. If, as insisted by Cities Service, the County and its officials have no right to question the legality of the action of the State Board, then any action of the State Board favoring a taxpayer, however illegal, however monstrous, cannot be challenged at all because, technically, no adversary faced the taxpayer before the State Board, therefore no one except the taxpayer can complain of the decision of the State Board. Such a situation would, of course, be intolerable, unreasonable, and contrary to the plain intent and meaning of our Constitution and statutes.

In the case of Nashville v. State Board of Equalization, 210 Tenn. 587, 360 S.W. 2d 458 (1962), the State Board of Equalization upheld the claim of exemption of The Sunday School Board of the Southern Baptist Convention in respect to certain of its properties. The City of Nashvile challenged the decision of the State Board by petition for certiorari and supersedeas. The Supreme Court resolved the issues in favor of the City and concluded:

> For these reasons, we think the decrees below were erroneous, and a decree will be entered here reversing them, sustaining the City's right to assess the parts of the Board's real estate used for business purposes, as above described, and remanding the case to the Chancery Court for further proceedings not inconsistent with this opinion." 210 Tenn., p. 615, 360 S.W.2d, p. 470.

On petition to rehear, the Supreme Court rejected the contention that there had been a judicial redetermination of facts decided by the State Board because the reversal was upon a ruling of law upon uncontroverted facts.

In Nashville v. State Board of Equalization, 50 Tenn.App. 692, 363 S.W.2d 520 (1962), the State Board of Equalization held certain property of Watkins Institute to be exempt and the City of Nashville sought to set aside the ruling of the State Board by certiorari and supersedeas. This Court declined to set aside the ruling of the State Board.

In neither of the foregoing cases was any question made as to the right of the City to attack the ruling of the State Board by petition for certiorari and supersedeas. Hence, neither decision is conclusive upon the question of whether Polk County has standing to bring this suit. However, the foregoing are illustrative of recognized judicial policy of hearing complaints by petition for certiorari from any party whose interests are adversely affected by allegedly illegal or arbitrary acts or decisions.

Taxpayers have been permitted to seek relief from illegal actions which impose additional tax burden upon them. Southern Railway Co. v. Hamblen County, 188 Tenn. 672, 222 S.W.2d 9 and cases cited therein.

The first assignment of error is respectfully overruled.

The second assignment of error is:

"The Chancellor erred in holding that the State Board of Equalization acted invalidly, contrary to law and in excess of its jurisdiction."

The uncontroverted facts are stated in appellees' brief as follows:

"The record shows that four members of the State Board were present at the beginning of the hearing, i. e., Beach, Carr, Snodgrass and Worley (R. p. 1), Mr. Keeton having left. (R. p. 3). There is no question but that Mr. Keeton did not hear any of this proceeding. (Dep. W. Keeton). Nor is there any question but that Judge Beach left at the luncheon recess (R. p. 71) and did not return for the afternoon session. (Stip. W. Beach). There is no question but that the afternoon session was heard by only three members of the State Board, i. e., Snodgrass, Carr and Worley. Sixty-seven and one-fourth pages of the record comprise the morning session. Twenty-three pages comprise the afternoon session."

Petitioners-Appellees also point out that Board Member Carr, who was present throughout the hearing, did not attend the executive session at which the final decision was made and did not sign the minutes of said meeting. It is therefore insisted that there was no participation by Mr. Carr in the decision that was rendered by the State Board.

In the case of Smoky Mountain Land, etc., Co. v. Lattimore, 119 Tenn. 620, 105 S.W. 1028 (1907), the property owner sued to invalidate a back-assessment by the State Board of Equalization, which was ordered after a hearing by only one member of the board, although all three of the board members signed the assessment. The Supreme Court sustained the sufficiency of averments of the bill and remanded with the following statement:

"By subsection 1, § 38, c. 258, p. 671, Acts of 1903, it is provided that 'a majority of the board shall constitute a quorum for the transaction of business.'

"The board is by the act constituted a *quasi* court, a majority of whom alone is authorized to act in a particular case. The board is composed of the Secretary of State, the Treasurer, and Comptroller, and not less than two of these can lawfully act in any cause. . . . Complainant has the right to be present before that board, or before a legal quorum of that board. This is not merely formal. It is a right of complainant to present its defenses to a reassessment by evidence, oral or written, and by argument of counsel. Until complainant has had that opportunity before a quorum of the board, it has not had its day in court; and any judgment, signed though it may be by the whole board, without having been first permitted to have its case heard as required by law, is void. The hearing of the case by only one member of the board is equivalent to no hearing. The citation given to complainant in the first instance is to afford an opportunity to be heard by a legally constituted board; and the Legislature did not intend that one member of the board can conduct alone the trial, hear the evidence and argument of counsel, pass upon the sufficiency of these, render judgment, and have his judgment signed by the remaining members of the board, before whom neither complainant nor his counsel have had a hearing. It was intended at least a quorum should hear the trial; otherwise, the citation to complainant to appear and make defense would be an empty, meaningless formality." 119 Tenn., pp. 632, 633, 105 S.W., p. 1030

Article I, Sec. 17, Constitution of Tennessee, provides:

"*Sec. 17. Open courts—Redress of injuries—Suits against the State.*— That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct."

■ Although the courts have no jurisdiction to review the judgments of inferior tribunals whose acts or findings are final and conclusive, the courts may require the tribunal to act within the law of its creation, without fraud, and with opportunity for a full and fair hearing. McKee v. Board of Elections, 173 Tenn. 276, 116 S.W.2d 1033, 117 S.W.2d 755 (1938).

Thus, it behooves the courts, and it is their duty under the Constitution, to secure to every citizen (including groups of citizens) the right to be dealt with, not only by the courts, but by all governmental agencies in accordance with due process.

The State Board of Equalization, for all the prominence of its ex-officio members and the magnitude of the rights subject to its powers, is not above the constitutional requirement that due process attend its proceedings and decisions.

§§ 67–201, 67–202, T.C.A., are (in part) as follows:

"*67–201. State board—Time and place of meeting—Notice.*—The state board of equalization shall meet at the office of the commissioner of finance and taxation, annually on the second Monday in August. The said commissioner of finance and taxation shall make an annual report to said board, laying all facts and data assembled by the commissioner before said board for its consideration and action. A majority of said board shall constitute a quorum for the transaction of business.

. . . . . .

"*67–202. Quorum—Special sessions.*— A majority of the board shall constitute a quorum for the transaction of business."

Black's Law Dictionary, Fourth Edition, p. 1421, cites authorities in support of the following definitions of "quorum":

"Such a number of the members of a body as is competent to transact business in the absence of other members.

When a committee, board of directors, meeting of shareholders, legislature or other body of persons cannot act unless a certain number at least of them are present, that number is called a 'quorum'."

To the same effect is 74 C.J.S. p. 171 with the additional:

"The word 'quorum' implies a meeting, and the action must be group action, not merely action of a particular number of members as individuals." 74 C.J.S., p. 171

■ By the insistence of appellant, Cities Service Company, the State Board of Equalization is a supreme adjudicator, above the mandates of the Constitution, the statutes of the Legislature and the watchful eyes of the courts. On the contrary, the State Board of Equalization is a quasi judicial agency, a creature of statute, duty bound to do justice by due process in the adjustment of tax assessments. The mere fact that the State Board acquires jurisdiction by the appeal of a taxpayer does not negative the truth that every matter before the State Board involves two conflicting interests. On the one hand is a taxpayer whose assessment is to be affirmed, raised or lowered by the State Board. On the other hand is the taxing authority and all other taxpayers of the taxing area whose rights, properties, incomes and liabilities will be affected by the decision of the State Board.

Whenever one taxpayer is relieved of a tax burden, that burden falls upon all other taxpayers, or the taxing authority is deprived of funds to perform its mission. This principle was recognized when Polk County and its officials were notified to be present at the State Board hearing.

■ Not only is the taxpayer entitled to a hearing by a quorum of the State Board; but also the taxing authority, as the representative of all other taxpayers, is entitled to the same right.

This right was denied by the procedure whereby the State Board reached its decision in this case.

Cities Service insists that the State Board was authorized to proceed without a quorum by its own rules, which, it is said, were authorized by § 67–203, T.C.A., as follows (in part):

"*67–203. Rules and regulations—Evidence used before board.*—Said board is vested with the power to make such rules and regulations and prepare such forms as it may deem proper for its use and government; . . ."

█ This statute is not interpreted to mean that the State Board was granted unlimited rule-making power, including the power to emasculate the statutes (supra) governing its proceedings, nor the power to deprive any citizen or group of citizens of his or its right to justice by due process.

The particular rule of the State Board upon which appellants rely is as follows:

"(c) A majority of the Board shall constitute a quorum for the transaction of business, provided, however, that a hearing may proceed with the consent of all parties to the proceeding, and by agreement of at least four (4) of the Board members, it being understood that the member or members absent shall at all times have the right, if desired, to participate in the disposition of said matters as fully as though present."

█ To the extent that this rule purports to deprive the taxpayer, or any other interested person or group of persons, of that hearing by a quorum and decision by a majority thereof, as provided by the statute, said rule is invalid, and cannot validate any action of the State Board which violates a statute. The quoted rule does not cure or avoid the fatal defect of lack of quorum.

█ Appellant urges that the statute authorizes the State Board to gather, re-ceive and consider evidence by means other than full-quorum meetings of the Board. Such "extra-judicial" gathering of evidence is not unknown to administrative proceedings before boards and commissions; however, when employed, it is subject to the same safeguards of "due process" as apply to all methods and proceedings of governmental agencies.

█ It does not appear from this record that, while one necessary member of the quorum was absent, the remaining three (less than a quorum) were conducting an "extra-judicial field trip," gathering information to be later conveyed to and considered by their fellow board members. The hearing began and proceeded as a full-dress, full-scale, full-quorum, hearing by the Board. The insistence that the Board resolved itself into a "fact-gathering committee" is not supported by this record.

█ The interested parties are entitled to have the entire quorum of the State Board present and participating in any hearing or deliberation which purports to be an action of the Board itself, and this includes the right to have the *same* quorum (that is, the same particular board members) continue their participation from inception to conclusion. Board members are not authorized to "sit in shifts" on a case. When a particular quorum has undertaken the consideration of a controversy, then that same quorum must finish the consideration and decide the issue.

What has just been said does not preclude gathering of information or formulation of recommendations by members or employees of the Board. It does require that such information and recommendations be presented to and considered by a quorum of the Board with full safeguards to due process and the rights of affected parties to be heard by a quorum.

█ Appellants insist that the lack of quorum was waived by the representatives of petitioner by allowing the hearing to continue without protest. This insistence

is most surprising in view of the previous insistence that petitioners have no standing in this case because they were not interested parties before the State Board. In any event, the circumstances presented by this record do not constitute an effective waiver of so serious a statutory requirement as quorum.

For the reasons stated, the assignments of error of appellant are respectfully overruled, and the decision of the Chancellor invalidating the decision of the State Board on grounds of lack of quorum will be affirmed.

However, other questions remain for discussion and disposition.

The petitioners insisted before the Chancellor and insist before this Court that the jurisdiction and power of the State Board to act upon this matter ceased on October 1, 1970.

§ 67–829, T.C.A., is as follows:

"*67–829. Certificate to records of state board—Notice of action to county court clerks.*—When the state board shall have finished the equalization of assessments as provided, it shall append to the record of its action an official certificate signed by its members or a majority thereof: That the values of assessments equalized by it have been equalized, fixed, and computed in conformity with the standard prescribed by this chapter. Said state board shall also forward to each county court clerk an official certificate showing in detail the action of the state board with respect to the assessments of all properties within their respective counties. *Final action must be taken and certified by the board not later than October 1st,* for the current year, and taxes, in such case, shall become due on December 1st of each year." (Emphasis supplied)

To conclude, as insisted by appellees, that the effective legislative intent was and is that all action of the State Board must be completed by October 1 and that any actions taken thereafter are void, would produce a situation intolerable in its effect.

For example, review of local assessments by the State Board would be available only to those fortunate enough to obtain a hearing and disposition by October 1. Other applicants would be denied the benefit of review because of inadequate time, overcrowded schedule or delay by the State Board. Such applicants would clearly be denied equal treatment under the law.

It is inconceivable that the Legislature intended to create any such "Bargain-Day," "first comers served-others denied" system of tax review. Even if such were held to be the intent, the unconstitutional effect would invalidate the provision.

It is unnecessary to specify the other abuses and injustices which would arise from the literal interpretation of the "October 1 deadline" as insisted by appellees.

Statutes should be given the construction that will not render them useless. Tasco Development and Building Corp. v. Long, 212 Tenn. 96, 368 S.W.2d 65 (1963).

A construction should be avoided which impairs, frustrates or defeats the object of the statute. First Nat. Bk. of Memphis v. McCanless, 186 Tenn. 1, 207 S.W.2d 1007 (1948).

In the construction of statutes, the cardinal rule is to ascertain and give effect to the intent and purpose of the Legislature in relation to the subject matter of the legislation and to avoid a construction that would frustrate that purpose or one that would lead to an absurd result. Rippeth v. Connelly et al., 60 Tenn.App. 430, 447 S.W.2d 380 (1969).

Legislatures do not always use apt words to express their intent, and a reviewing court will look to the legislative purpose of a statute and follow that purpose even though a literal reading of the

language would suggest a different conclusion. Wirtz v. Allen Green & Associates (U.S.C.A.Tenn., 1967) 379 F.2d 198.

The reason and intention of the law will prevail over the literal sense of the words. Rose v. Blewett, 202 Tenn. 153, 303 S.W.2d 709 (1957).

There is no question that the Legislature intended to provide fair and just equalization of assessments by the State Board. It is equally certain that the Legislature intended to pass a fair, equitable and constitutional law. Any isolated verbiage of the law must yield to such legislative intent.

Accordingly, this Court has concluded that the provision in § 67–829, T.C.A., supra, that:

"Final action must be taken and certified by the board not later than October 1st, for the current year, . . .."

is directory in nature, specifying the duty of the State Board to complete its work. However, it is not conceived by this Court that the State Board has no power to act after October 1 upon matters for the current year.

Appellees cite Sanford Realty Co. v. City of Knoxville, 172 Tenn. 125, 110 S.W.2d 325 (1937) wherein assessments had been made by the tax assessor as required by law before February 10 and a successor assessor undertook to increase the assessments on February 15, after the February 10 deadline established by statute. The Supreme Court stated the controlling rule as follows:

"In 59 C.J., 1072, 1073, it is stated: 'There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory, but in the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent, *from a consideration of the entire stat-ute, its nature, its object, and the consequences that would result from construing it one way or the other,* or from such statute in connection with other related statutes; and the determination does not depend on the form of the statute.' " *172 Tenn., pp. 130, 131, 110 S.W. 2d, p. 327* (Emphasis supplied)

"From a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other," the Supreme Court held that the late, *second, reassessment* by the *new assessor* was void, thereby leaving in effect the *first, timely, original* assessment by the former assessor.

"From a consideration of" the same elements (listed above) in the present case, the opposite result is indicated.

Appellees also cite Iron Companies v. Pace, 89 Tenn. 707, 15 S.W. 1077 (1890), wherein taxpayers were re-assessed for former years under the Acts of 1887. The statute allowed ten days for appeal to *and judgment by* the county chairman. Appeal was made within ten days, but the *appellants themselves* obtained a continuance which delayed the decision of the county chairman beyond the ten day statutory limit. Under such circumstances, the Supreme Court declined to compel the county chairman to adjudicate the appeal after the expiration of the ten day limitation.

Despite the general statements in Iron Companies v. Pace, the true reason for the action of the Supreme Court therein is stated as follows:

"The action of the Chairman in dismissing the appeals of these complainants and refusing a revaluation and reassessment, when they had failed, for thirty-one days after the back assessments were made, to point out the grounds of their complaint and furnish proof to sustain them, was correct. He had no power to make any changes or corrections after ten days from the date of the back assessments. Of this result complainants have no just ground to

complain. They knew, or should have known, the law; yet they did not even appeal from the action of the Trustee and present the papers to the Chairman for seven days; and then on their own motion two continuances were granted. They never did present data and proof for the correction of any errors, or ask the present action of the Chairman on the same; though he was ready, as he says, to perform his duty with respect thereto at any time within the prescribed ten days, and would have done so if requested or furnished with proper evidence." 89 Tenn., pp. 720, 721, 15 S.W., p. 1080.

This Court cannot conceive that the Supreme Court in that case or any other case would reject the plea of taxpayers who had pursued their rights with diligence under the law but had been denied a hearing and adjudication *without their fault*. Accordingly, this Court does not regard the statements quoted from Iron Companies v. Pace as controlling in the present case.

■ This Court therefore respectfully rejects the contention of the appellees that the action of the State Board is void because it occurred after October 1. Consequently, the disposition of this appeal will result in a remand to the State Board for further hearing and disposition under its duties and powers which continue in each case until it (the State Board) has fully discharged all its duties in respect to the controversy.

As stated in Smoky Mountain Land, etc. Co. v. Lattimore, supra:

"As the former judgment was void, the appeal remained pending before the board as before, and the board, upon proper notice to complainant, had jurisdiction to reopen the case and render judgment or finding by the full board." 119 Tenn., p. 636, 105 S.W., p. 1031.

Appellees insist that the action of the State Board is void because not properly certified. This question may properly be pretermitted in view of the disposition of the appeal and the presumption that the statute will be satisfied by future certificates, except for date of action, which has been heretofore discussed.

Appellees next insist:

"VII. The purported assessment of the State Board was not an assessment of the value of the property according to the judgment of the State Board under the statutory standards, but in fact was on an unlawful basis and is therefore illegal."

§ 67–822, T.C.A., reads in part as follows:

"*67–822. Determinations by state board—False statements.—Said board shall receive, and consider all complaints and reports made to it, together with the evidence submitted therewith*; and shall equalize, compute, and *fix the value of all such properties* within its jurisdiction *by the standard of the actual cash value of same,* and, for said purposes, said board shall have the power, and it is made its duty to reduce or increase, values of property so that the values of all assessments when so equalized shall conform to said standard of actual cash value. . . ." (Emphasis supplied)

In regard to the basis upon which the State Board acted upon this controversy, this record contains a letter written on the stationery of the Comptroller of the State of Tennessee, one of the members of the State Board. Said letter is as follows:

December 14, 1970

"Judge Keith Bellew
Polk County Courthouse
Benton, Tennessee 37307

Dear Judge Bellew:

There seems to be some misunderstanding about the decision of the State Board of Equalization concerning the assessment of the Cities Service Company,

and I hope to clarify this matter for you and for others who are vitally interested.

As you will recall, we have a reassessment program and a reappraisal program currently in progress in our state. The reassessment program provides for an increase in the assessment level in order to meet the requirements of the law to bring assessments to 50% of value by 1973. The assessment level for 1970 is 30%. Since we could not get to all counties at one time with the reappraisal program, it is necessary to increase old assessments across-the-board each year. I believe there was an increase of 20% in the assessments in Polk County as there were in some 80 other counties in the state going from 25% of value to 30%.

The assessor of property in Polk County followed the instructions of this office and increased the assessments of other property by 20%, but in the case of Cities Service Company an additional substantial increase in the assessment was made.

In the hearing before the State Board of Equalization, evidence presented by Cities Service Company did not support the decrease requested by them nor was evidence presented to support an increase. The Board, therefore, had no alternative except to reduce the assessment back to where it was last year plus the 20% increase which was added to other property owners' assessments. The assessment for 1969 was $11,356,493.00 and the assessment as set by the State Board of Equalization for 1970 is $13,627,800.00, a 20% increase.

We do now have a reappraisal program currently in progress in your county, and I sincerely hope that values can be accurately determined and that assessments will be equalized to the satisfaction of al property owners and county officials.

Very truly yours,

/s/ C. N. Martin, Director
Division of Property Assesssments"

If this letter correctly recites the type of consideration given and the basis of the judgment of the State Board, then said judgment is subject to attack as illegal and arbitrary.

 It is a matter of common and judicial knowledge that there is now in progress a reassessment program as provided by § 67–1717 et seq., T.C.A. Examination of said code sections fails to disclose any authority for the State Board to fail or refuse to perform its duty in a specific case because such reassessment program is in progress.

§ 67–605, T.C.A., as amended in 1967 does provide for a graduated scale of increases to be made in assessments, beginning with a minimum of 15% of actual value in 1968 and increasing to 50% in 1973. For the year 1970, the minimum is 30%. No provision is found in the statute which restricts or confines any assessing authority to the mathematical formula of § 67–605. Indeed, it would be difficult to conceive of any statutory means or device whereby the *actual value* of any property could be arbitrarily and artificially fixed for a period of years, and the *assessable value* could be *arbitrarily and artificially* varied according to a stated formula.

Clearly, such was not the intent of the statute.

Prior to 1967, § 67–605, T.C.A., read as follows:

"*67–605. Basis of valuation.*—All property of every kind shall be assessed at its actual cash value. The term 'actual cash value,' is defined to mean the amount of money the property would sell for, if sold at a fair, voluntary sale."

Prior to the 1967 amendment, assessors were required by law to assess property at 100% of its actual cash value. In recognition of the universal disregard of this requirement and the great variances in degrees of departure from the statute, the later statute (present § 67–605) was passed to make uniform the criteria for assess-

ment. There has been no departure from the fundamental that all property must be assessed *upon the basis* of its actual cash value. That is, any assessment must begin with and be based upon a determined actual cash value.

For this purpose, the mere adjustment of a former, obviously fractional, assessment in accordance with the percentage formula of § 67–605 does not satisfy or discharge the duty of any assessing or equalizing authority. The taxpayers, and the tax-collecting authority (the county) have the right to have each property evaluated at its actual value at the time of assessment, and to have the assessment be at least that minimum percentage of *actual value* as required by law. This right is just as important to the taxpayer as it is to the taxing authority.

During a given period, some property may increase in value because of actual improvements thereon or various elements affecting its desirability or usefulness. During the same period, other property may decrease in value because of deterioration or obsolescence of improvements or other elements affecting its desirability or usefulness. No such changes in value can be lawfully ignored in making a proper evaluation at the time of each assessment and each review of assessment.

In Tomlinson v. Board of Equalization, supra, the majority opinion approved the refusal of a board of equalization to hear evidence by appellant or to certify a bill of exceptions, and declined the writ of certiorari under the Assessment Act of 1887. However, the strong dissenting opinion stated:

" . . . it is sufficient to say that the State is ordinarily as much bound by the Constitution and laws thereunder as the citizen, and it is its duty to protect and not oppress the citizen. While every legitimate aid will be given to the State in collecting its revenue, the Courts must see that their aid is authorized, remembering the State is the creature and not the creator of the Constitution.

"If the action of the Board is to be final, it can only be so after the law has been obeyed, which cannot be done under a rule that the Board may, in its arbitrary discretion, as was done here, reject a main provision. The Board is a judicial tribunal to try questions of fact and of law. In this case it passed alone upon that of law, its construction of the statute holding that petitioner had no right to introduce proof or be heard upon the subject of his complaint. It construed the law for itself and by itself. It said to petitioner: 'The law does not mean what you claim it to mean. We are the sole and exclusive judges of the meaning of the words of the Act, and of the intention of the Legislature in the employment of these words.' Now, if the Legislature may confer such judicial functions on this Board, I can see no reason why it may not say that Magistrates, County, Circuit, and Chancery, and 'such other inferior' Courts as it may establish, shall have exclusive jurisdiction in such matters as the Legislature may name, and their respective actions, judgments, and decrees 'shall be final.' The Board of Equalization is a Court authorized by Article VI., Section 1, of the Constitution, and upon which the Legislature had no power to confer a jurisdiction to make its action final. Such legislation contravenes the spirit and theory of our State government." 88 Tenn. (Pickle), pp. 19, 20, 21, 22, 12 S.W., p. 418

Each and every element of our government, including courts, administrative agencies, officials and employees, exists by sufferance of and for the benefit of all of the people without distinction or partiality. As insisted in briefs, the present conflicts between property owners of different classes, together with other taxation problems, has cast a heavy burden of litigation upon equalization boards, particularly the State Board. It is also true that the other, important duties of members of the State

 

Board restrict their availability to perform their duties on the Board. All of these considerations are for the Legislature. Any relief from the burdens and inconveniences imposed by the Legislature must come from the same body.

 The Courts have no power or authority to lighten the statutory load or excuse non-performance of statutory duties because they are burdensome.

Accordingly, upon remand, it will be the duty of a quorum of the State Board, after making proper investigation and considering proper evidence, to establish and declare what, in its combined judgment, was the actual value of the properties of the appellant on January 10, 1970. Having done so, it will be the duty of the State Board to fix an assessment for the year 1970 at not less than 30% of the actual value determined by the State Board.

A record of all evidence considered by the State Board, including information gathered by members or others and communicated to the full quorum, should be preserved for certification to the courts if required.

The zeal and extreme positions of the parties to this appeal are understandable. The subject matter is large, and the results will have considerable financial impact upon the interested parties. Each party naturally would prefer for this proceeding to be abruptly terminated at a point where the advantage rested with him. Justice does not lie in such a disposition of this appeal. Justice lies in a fair ascertainment of the facts by the tribunal having the fact-finding duty and the impartial application of the law to such facts.

The decree of the Chancellor will be modified to remand the cause to the State Board of Equalization for further proceedings consistent with the law and this opinion.

As modified, the decree of the Chancellor is affirmed.

On remand, the costs of the cause, including costs of this appeal, should be taxed equally, that is, one half to the petitioners, Polk County et al., and one half to the respondent, Cities Service Company.

Modified, affirmed and remanded.

SHRIVER, P. J., and PURYEAR, J., concur.