STACY ROSE et al.

*v.*

S. J. (SAM-)--BLEWETT, et al.

(*Nashville,* December Term, 1956.)

Opinion filed April 1, 1957.

Rehearing Denied June 7, 1957.

JOHN W. LOCH, and CANALE, GLANKLER, MONTEDONICO, BOONE & LOCH, Memphis, WM. ALFRED ROSE, ROBERT R. REID, JR., and WHITE, BRADLEY, ARANT, ALL & ROSE, Birmingham, Ala., of counsel, for appellants.

J. L. JONES, Pulaski, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

When S. Clifton Rose died intestate he was the owner of considerable real estate acquired during his life. It is located in Memphis and in Giles County. He left surviving him no issue, brother, sister, descendant thereof, nor parent.

Intestate's nearest blood relatives on his father's side are five first cousins, related to intestate in the 4th degree, computed according to the civil law, and two second cousins, related to him in the 5th degree, these two being the children of, and representing, a deceased first cousin. These seven were complainants in this case. The common ancestor of complainants and intestate was the intestate's paternal grandfather, Solon Eldridge Rose.

Intestate's nearest blood relatives on his mother's side are three third cousins, related to him in the 6th degree. These three were the defendants to the bill. The ancestor common to them and intestate was Thomas Martin, the maternal great-great grandfather of intesttae.

The controversy between complainants and defendants is with reference to the disposition of this realty. That disposition is controlled by Code Section 31-101, subsection (2) (c), reading as follows:

"(2) * * * If the estate was acquired by the intestate, and he died without issue, his land shall be inherited—[there being no brother, or sister or descendant thereof surviving him]

"(c) If both parents be dead, in equal *moieties* by the heirs of the father and mother in equal degree, or

representing those in equal degree of relationship to the intestate, but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood or representing those who are nearest in blood to the intestate, shall take in preference to others more remote.''

The complainants insist that this code section passes all this realty to them because they, the closest blood relatives of intestate on the father's side, are closer such relatives of intestate than the closest on the side of intestate's mother.

The defendants insist that this code section passes a one-half undivided interest in all this land to such group of heirs of the father as are the closest relatives of the intestate on his father's side, or representing one who, had he or she been living, would have been a member of such group, and that the remaining one-half undivided interest in this realty passes to the group of closest relatives who are heirs of his mother, notwithstanding the fact that they are not as close blood relatives at the group of equal degree, or the representative of such, on the side of intestate's father.

The Chancellor sustained the contention of the defendants. Complainants appealed to this Court, the facts being stipulated.

The disagreement between the parties arises from their contrary construction of the last part of sub-section (2) (c) reading as follows:

''but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood or representing those who

are nearest in blood to the intestate, shall take in preference to others more remote.''

This code section is a part of Chapter 171, Acts of 1841-1842.

The first decision of this Court relevant here is *Beaumont v. Irwin,* decided in 1854, and reported in 34 Tenn. 291. The Court says there, at page 299, that ''this cause involves the construction of the acts of 1842, Chapter 169, Section 1.'' The importance of the decision is such that quotations therefrom will be rather full. The Court quoted the statute which it construed as follows:

''The statute enacts 'that where any person shall die seized of any lands, tenements, or hereditaments, or any right thereto, or entitled to any interest therein, not having legally disposed of the same by last will or testament, and having no issue, or brothers or sisters, or issue of brothers or sisters, his or her estate shall descend in equal *moieties,* in fee-simple, to his or her father and mother, to hold as tenants in common; or, if either be dead, then to the surviving parent; and if both be dead, then the estate shall descend, in equal *moieties,* to the heirs of the father and the heirs of the mother.'

''The first proviso to the above clause declares that, if such heirs do not stand in equal degree of relationship to the intestate, those who are nearest in blood shall take the estate. And the second proviso declares 'that when the estate came to the intestate by gift from the father, or by gift, devise, or descent from the ancestors of the father, the same shall descend to the father only, if living, in preference to the mother.

And when the estate came to the intestate by gift from the mother, or by gift, devise, or descent from the ancestors of the mother, the same shall descend to the mother only, if living, in preference to the father.'

"This statute is inartificially framed, and its meaning is somewhat obscure." At pages 299-300.

The construction which that Court placed on the statute just quoted is:

"The policy of the statute would seem to be to distinguish between such estate of the intestate as he may have acquired, in any mode, from either parent, or either parental line, and such estate as he may have acquired otherwise; and that, in the former case, the estate should go to the parent, or relations of the line whence 'it came;' and in the latter case, that it should go in equal *moieties* to the parents, if living, or the survivor; *and if both were dead, then in like manner to the heirs of both.*"

It repeats that part of the holding which concerns the issue now under consideration, viz.:

"And in the event of the death of both parents in the life of the intestate, *the heirs of the father and the heirs of the mother take the estate in equal moieties.*" Each emphasis above is supplied.

And then closes with the following statement, at page 303:

"The construction we have put upon the statute, while it leaves important principles untouched, is, we think, in accordance with the spirit and meaning of the law."

So, that Court in construing, as a whole, the statute which it quoted concluded that "the spirit and meaning of the law" is that if both parents predecease the intestate "the heirs of the father and the heirs of the mother take the estate in equal *moieties.*"

Immediately before so construing that statute the Court had expressly called attention to, to use the Court's language, "the first proviso to the above clause declares that, if such heirs do not stand in equal degree of relationship to the intestate, those who are nearest in blood shall take the estate". Thus, an inescapable conclusion is that the Court necessarily had in mind this proviso, as well as all other provisions of the statute it was construing, when it held that if both parents have predeceased the intestate the heirs of each take his land in equal *moieties.*

The only difference between the language of the proviso in question in Chapter 169 of the Acts of 1842 thus construed in *Beaumont v. Irwin,* and the language of Chapter 171, Acts of 1841-1842 carried as Section 31-101 (2) (c) of the Code, is that in this code section, after the expression "in equal degree", there is added the expression,—"or representing those in equal degree of relationship to the intestate", and "or representing those who are nearest in blood to the intestate, shall take in preference to others more remote".

The meaning of the expression appearing in the code section, to-wit, "or representing those in equal degree of relationship to the intestate" is adjudicated in *Selby v. Hollingsworth,* 81 Tenn. 145, 147, where the question arose. That adjudication is this:

"But the statute calls for an heir 'representing those in equal degree of relationship to the intestate,' not for a person representing one who is himself only a representative."

Thus, under the particular proviso with which the case at bar is concerned, and being a proviso which is to take care of a situation, the happening of which is relatively infrequent, it is held that representation among the collaterals who take is limited, rather than being the unlimited representation in descent to the heirs, (not next of kin) of intestate. The reason for this distinction may be that expressed in 16 American Jurisprudence, Descent and Distribution, Section 41, Page 810, as follows:

"The extent to which the right of taking by representation is carried in determining descent to collateral kindred is limited. It is manifest that in the opinion of the lawmakers, such right of taking by representation must end somewhere. If not, there would be no occasion for providing for a descent to the next of kin in equal degree."

In reality, therefore, on the question at issue here, there is no difference in the meaning of the controlling proviso carried at 31-101(2) (c), and the like proviso in the statute which the Court construed as a whole in *Beaumont v. Irwin*. And there, as we have seen, the Court held that "the spirit and meaning of the law" is that the heirs of the predeceased mother and the heirs of the predeceased father take, each, one-half of the intestate's land.

Subsequent to the decision in *Beaumont v. Irwin*, this Court, while dealing with this code section at various

times between the year 1870 and the year 1922, has made pronouncements consistent with the holding in *Beaumont v. Irwin*. These statements are that if both parents be dead under the situation existing in this case, the land of the intestate falls "upon the right heirs of both, as tenants in common", *Towls v. Rains*, 49 Tenn. 355, 358; and "if both be dead, the law contemplates that the heirs of both shall take precisely as if each had taken when alive, and then died", In *re Will of Miller*, 70 Tenn. 54, 62; "therefore, under the statute, upon their failure to survive intestate, one undivided one-half interest goes to the heirs of the father, and the other such interest to the heirs of the mother". *Barnes v. Redmond*, 127 Tenn. 45, 49, 152 S.W. 1035, 1036; "both the chancellor and the Court of Civil Appeals very properly held that as to this property one half passed to the Spofford relationship and the other half to the Martin relationship", *Spofford v. Rose*, 145 Tenn. 583, 592, 237 S.W. 68, 71. No one of these decisions dealt specifically with proviso upon which appellants rely.

The Chancellor recognized that the above quoted pronouncements of this Court were not necessary to the decision of the questions necessarily determined in each of those cases, but concluded that these pronouncements had been so long acquiesced in and considered to be the law by the bench and bar as to become a rule of property which should not now be disturbed, even though, as an original proposition, such pronouncements may have been erroneous. The complainants say the pronouncements were *dicta* and *dicta* should never be given the effect of *stare decisis*.

There is much merit in complainant's statement,

generally speaking, as to dicta not having a controlling effect as precedent. But it is a fact that a pronouncement not necessary to the decision of a case, though incidental, and when "apparently made with consideration and purpose, is at least a judicial dictum, as distinguished from mere *obiter dictum,* and is enttiled to much weight". *Taylor v. Taylor,* 162 Tenn. 482, 488-489, 40 S.W.2d 393, 395. Especially is this true when it appears to have been regarded over a period of years by bench and bar as establishing a rule of property. State ex rel. *Gaines v. Whitworth,* 76 Tenn. 594, 612.

As this Court views it, section 31-101(2) (a), (b) and (c) manifests upon its face a paramount intent that the land of which an intestate dies the owner shall be divided equally between heirs of the intestate's predeceased father and mother, respectively, when such intestate is not survived by issue, brother, sister, or descendant thereof. *Beaumont v. Irwin,* immediately after quoting the exact equivalent of the here controversial proviso, expressly so adjudicated. Each time thereafter that this Court has dealt with that code section over a period of seventy odd years it has pronounced such to have been the legislative intent.

■ ■ To hold, because of one proviso of obscure meaning in that statute, that all the land of such intestate passes to heirs of that parent who are closer kin to intestate than heirs of the other parent whose kinship is more remote would be (1) to repudiate *Beaumont v. Irwin,* and (2) give no effect to the heretofore quoted pronouncements from time to time of this Court, and (3) violate the fundamental rule (a) that effect must be given the ascertained paramount intent of the legislature

"although there exist some apparent obstacles". *Rawlins v. Braswell,* 191 Tenn. 285, 291, 231 S.W.2d 1021, 1023, and (b) "that the reason and intention of the law, when obvious, will prevail over the literal sense of the words." *Byrd v. Pioneer-Jellico Coal Co.,* 180 Tenn. 396, 401, 175 S.W.2d 542, 544.

■ An excellent brief has been submitted in behalf of these appellants. Perhaps that brief presents about the strongest case that can be made in favor of appellants' insistence. The fallacy therein, this Court thinks, is that the proviso upon which the appellants rely is isolated from the rest of the statute, and the presentation proceeds upon that basis. "It is not in accord with any rule of statutory construction to lift one sentence out from the statute and construe it alone, without reference to the balance of the statute." *Cummings v. Sharp,* 173 Tenn. 637, 643-644, 122 S.W.2d 423, 425.

■ This Court's conclusion is that the effect of section 31-101, sub-section (2) (c), T.C.A. is to pass the land of this intestate one-half to the group which is closest blood kin to him on his father's side, and those representing a deceased member of such group, and one-half to the group which is closest blood kin to him on his mother's side, and those representing a member of such group, without regard to the fact that the group on the father's side is closer blood kin than the group on the mother's side. The decree of the Chancellor so holding is affirmed.

The costs of the appeal will be equally divided between appellants and appellees. The cause will be remanded for further proceedings, and the cost of that Court adjudged there at the proper time.