Emmy AUSTIN and William L. Austin, Sr., Next of Kin of William L. Austin, Jr., Appellees,

v.

MEMPHIS PUBLISHING COMPANY, d/b/a the Commercial Appeal and Memphis Press Scimitar, Appellant.

Supreme Court of Tennessee, at Jackson.

Aug. 1, 1983.

Robert M. Johnson, Patrick M. Ardis, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, for appellees.

Walter P. Armstrong, Jr., Fred M. Ridolphi, Jr., Jon P. McCalla, S. Russell Headrick, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Bruce W. Sanford, Lee Levine, Baker & Hostetler, Washington, D.C., for appellant.

OPINION

FONES, Chief Justice.

We granted defendant's T.R.A.P. 11 appeal to determine whether the qualified privilege against disclosure granted the news media under Tennessee's Shield Law,

T.C.A. § 24–1–208,[1] is contingent upon a finding that the information or source of information sought was obtained in the course of a confidential newsman-informant relationship.

## I.

Plaintiffs filed suit in Shelby County Circuit Court for the wrongful death of their son as a result of a bridge collapse in Memphis, Tennessee. In January, 1981, plaintiffs caused *subpoenas duces tecum* to be issued to non-party newspapers, The Commercial Appeal and Memphis Press-Scimitar, seeking "any and all correspondence, studies, reports, memoranda, or any other source material used by the newspaper[s] in preparing various articles dealing with" the Perkins Street bridge collapse. Defendants moved to quash the subpoenas on the basis of T.C.A. § 24–1–208, but the trial court ordered the publishing company to comply. The Court of Appeals stayed the orders of compliance and on July 31, 1981, declared the trial court's orders null, void and of no effect for lack of subject matter jurisdiction. On September 21, 1981, this Court denied plaintiffs' application for permission to appeal. *See Austin v. Memphis Publishing Company,* 621 S.W.2d 397 (Tenn.App. 1981).

The present issue resulted from plaintiffs' application for divestiture of protection before the Court of Appeals pursuant to section (c) of the Shield Law. Plaintiffs acknowledged that they could not meet all of the requirements of subsection (c)(2) in order to justify an order of divestiture, but asserted that the statute was not intended to apply to civil cases or non-confidential information. The Court of Appeals held that the Legislature intended to protect only information received under circumstances of confidentiality and relied principally upon the following rationale:

"We believe that T.C.A. § 24–1–208 was the media's response via our Legislature to the *Branzburg* decision. It is evident to us that the statute was passed to assure confidentiality in order to facilitate the gathering of news and information, which confidentiality was not provided by the *Branzburg* decision.[2] Therefore, we find the element of confidentiality to be implicit in T.C.A. § 24–1–208."

---

2 A comparison of subsection (c) of T.C.A. § 24–1–208 with Justice Stewart's language in his dissenting opinion, which dissent would afford confidentiality, should dispell any doubt that drafters of T.C.A. § 24–1–208 were considering the *Branzburg* opinion. See 408 U.S. at 743, 92 S.Ct. at 2681.

Having concluded that the statute did not protect any nonconfidential information, the Court of Appeals remanded the case to the trial court for a factual determination

---

1. 24–1–208. *Persons gathering information for publication or broadcast not required to disclose—Exceptions.*—(a) A person engaged in gathering information for publication or broadcast connected with or employed by the news media or press, or who is independently engaged in gathering information for publication or broadcast, shall not be required by a court, a grand jury, the legislature, or any administrative body, to disclose before the general assembly or any Tennessee court, grand jury, agency, department, or commission any information or the source of any information procured for publication or broadcast.

(b) Subsection (a) shall not apply with respect to the source of any allegedly defamatory information in any case where the defendant in a civil action for defamation asserts a defense based on the source of such information.

(c)(1) Any person seeking information or the source thereof protected under this section may apply to the Court of Appeals for an order divesting such protection. Such application shall be made to the Court of Appeals in the grand division of the state of Tennessee wherein the hearing, action or other proceeding in which the information sought is pending.

(2) The application shall be granted only if the court after hearing the parties determines that the person seeking the information has shown by clear and convincing evidence that:

(A) There is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law;

(B) The person has demonstrated that the information sought cannot reasonably be obtained by alternative means; and

(C) The person has demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information.

(3) An order of the Court of Appeals may be appealed to the Supreme Court of Tennessee. [Acts 1973, ch. 27 §§ 1–3; T.C.A., § 24–113—24–115.]

of confidentiality or non-confidentiality of the information sought by plaintiffs.

We do not agree that (1) there exists any basis in the Tennessee Shield Law to look to the *Branzburg* case, or elsewhere for legislative intent, nor (2) if appropriate to do so, that *Branzburg* requires a finding that the Legislature intended to limit the privilege to confidentially acquired material.

## II.

The determination of the issue before us is controlled by the most basic and fundamental rule of statutory construction. It has been expressed in many ways over the years but has always conveyed the principle that the courts are restricted to the natural and ordinary meaning of the language used by the Legislature within the four corners of the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent.

In one of the earliest expressions of the rule, the Court in *Miller v. Childress*, 21 Tenn. 319, 321–22 (1841) said:

"Where a statute is plain and explicit in its meaning, and its enactment within the legislative competency, the duty of the courts is simple and obvious, namely, to say *sic lex scripta*, and obey it."

In *Heiskell v. Lowe*, 126 Tenn. 475, 499, 153 S.W. 284, 290 (1912), the Court quoted with approval from *Sedgwick on Statutory & Constitutional Law*, in part, as follows:

"In a recent American work on Statutory Law, it is said that the intention of the legislature is to be learned from the words it has used; ... and, if that intention is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the judges are not at liberty, on consideration of policy or hardship, to depart from the words of the statute; that they have no right to make exceptions or insert qualifications, however abstract justice or the justice of the particular case may seem to require it."

*Hickman v. Wright*, 141 Tenn. 412, 210 S.W. 447 (1918) is a case of particular significance here, because the Court of Appeals, in searching for legislative intent, has found justification for insertion of the missing word "confidential" into the statute. In *Hickman*, the Court found that the Legislature intended to deprive all state officials, enumerated in Chapter 47 of the Public Acts of 1917, of their fees and to put them on a salary basis, but that for some unexplained reason, the Legislature had overlooked fixing salaries for such officials in eighty-three counties. The Court noted that such an oversight, as termed in the law, was a "*casus omissus.*" In that situation, the Court reasoned as follows:

"A pure '*casus omissus*' occurring in a statute can never be supplied or relieved against by the court under any rule or canon of construction or interpretation. [citations omitted].

The foregoing conclusion is not in conflict with our liberal rules of construction and interpretation of statutes. The universal rule seems to be that if the actual langauge and provisions of the statute are plain and clear, and are devoid of contradiction or any affirmative ambiguity, so that the statute, as the result of the express provisions, is not reasonably susceptible of a twofold meaning, then there is no room for applying any other rules or canon of construction to the act. [citations omitted]." *Id.* at 418, 210 S.W. at 448.

In *Pless v. Franks*, 202 Tenn. 630, 635, 308 S.W.2d 402, 404 (1957), Justice Tomlinson stated the rule in this concise manner:

"As to the legislative intent, the Court may look only to the four corners of the statute as a general rule. And there is nothing in these statutes suggesting an exception to that rule."

More recently, Justice Cooper, writing for this Court in *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (1977), expressed the rule as follows:

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. *State ex rel. Rector v. Wilkes*,

222 Tenn. 384, 436 S.W.2d 425 (1968). This legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language. *Rector v. Wilkes, supra; Moto-Pep v. McGoldrick,* 202 Tenn. 119, 303 S.W.2d 326 (1957); *Rose v. Blewett,* 202 Tenn. 153, 303 S.W.2d 709 (1957)."

In T.C.A. § 24–1–208(a), the Legislature has in clear and unambiguous language expressly stated that a newsman, etc., gathering information for publication, shall not be required to disclose to any Tennessee court, etc., "any information or the source of any information procured for publication or broadcast." The Legislature did not qualify "any information" or the "source of any information" with the word "confidential." The non-specific adjective "any" means "all." *See, e.g., Employers Liability Assurance Corp. v. Farquharson,* 182 Tenn. 642, 652, 188 S.W.2d 965, 969 (1945). The rule discussed above prohibits the courts from resorting to outside sources to determine legislative intent.

■ The Court of Appeals did not address plaintiff's contention that the statute was not intended to apply to civil cases. Obviously, there is no express language in the statute so limiting the privilege. The reason and the rule that requires us to reject the contention that the statute is limited to confidential information and sources requires that it not be limited to criminal cases. In addition, subsection (b) of T.C.A. § 24–1–208, which excludes the source of information from the privilege in a civil action for defamation where defendant asserts a defense based on that source, would have been superfluous if the statute as a whole could be construed as inapplicable to civil actions.

### III.

Tennessee's Shield Law was enacted nine months after the United States Supreme Court's decision in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Branzburg, a reporter for the Louisville Courier Journal, had written articles about the sale and use of drugs wherein it was clear that he had actually witnessed violations of the drug laws and had stated in the articles that he had promised not to reveal the identities of the violators. Branzburg was subpoenaed to appear before a Kentucky grand jury "to testify in the matter of violations of statutes concerning the use and sale of drugs." The newsman relied upon the Kentucky Shield Law and the First Amendment to the United States Constitution in refusing to answer and in seeking a protective order. The Kentucky courts held that the statute protected Branzburg from revealing "confidential associations, sources or information" but did not protect him from the requirement to "answer any questions which concern or pertain to any criminal act, the commission of which was actually observed by [him]." *Id.* at 670, 92 S.Ct. at 2651. The United States Supreme Court held that requiring a newsman to testify before a grand jury did not abridge the freedom of speech and press guaranteed by the First Amendment nor did the newsman's confidentiality agreement, to conceal the sources, the material and the criminal acts, invoke a constitutional privilege. In dissent, Justice Stewart, joined by Justices Brennan and Marshall, would have granted a limited newsman's privilege, to-wit: upon establishing a confidential relationship with respect to the material sought to be revealed to the grand jury, the burden would shift to the government to show the existence of the three elements specified in T.C.A. § 24–1–208(c)(2)(A), (B) and (C). *Id.* at 743, 92 S.Ct. at 2681. It is true that the three subsections are in the almost identical language used by Justice Stewart, however, Justice Stewart and his dissenting colleagues would not have required "clear and convincing evidence" as the Tennessee Legislature did. But, more important, if we could look beyond the statute for legislative intent, we would conclude that the Tennessee Legislature considered and rejected

**150**

"confidentiality" because in Justice Stewart's dissent it was *the linchpin* that triggered the privilege. It seems to us that the prominence of confidentiality in that dissenting opinion made it essential that the Legislature specify that upon a showing of confidentiality on a motion by a newsman to quash a subpoena, the privilege would arise and could only be divested by proof of the three requirements of subsections (A)(B) and (C). Thus, if permitted, we would conclude that the Legislature had considered and rejected the limitation of confidentiality.

In *Branzburg,* the United States Supreme Court also observed that state legislatures were free, within First Amendment limits, to fashion their own standards with respect to a newsman's privilege, either qualified or absolute. *Id.* at 706, 92 S.Ct. at 2669. We agree with the Court of Appeals that *Branzburg* probably induced the media to lobby for and the Legislature to enact a shield law. But no matter how surprising it may be that the Legislature would embrace non-confidential as well as confidential material, and civil as well as criminal litigation, in contradiction of the time-honored rule that the public has a right to every man's evidence, we cannot insert language into the statute to alter that result.

 We therefore hold that the Court of Appeals erred in construing the Shield Law as limiting the phrase "any information or the source of any information procured for publication or broadcast" only to "circumstances of confidentiality." Our holding is consistent with the decisions of those courts which have reviewed similarly worded state shield laws and found them to include protection of non-confidential information or sources. *See, e.g., Lawless v. Clay,* 9 Med. L.Reptr. 1223 (N.Y.Sup.Ct., Onondaga Co. 1982) and N.Y.Civ.Rights Law § 79–h (McKinney Supp.1982); *Aerial Burials Inc. v. Minneapolis Star & Tribune Co.,* 8 Med.L. Reptr. 1653 (Minn.D.C.1982) and Minn.Stat. Ann. § 595.021–025 (West Supp.1983); *In re Vrazo,* 176 N.J.Super, 455, 423 A.2d 695 (1980) and N.J.Stat.Ann. § 2A:84A–21–21a (West Supp.1983); *Steaks Unlimited, Inc. v.*

*Deaner,* 623 F.2d 264 (3rd Cir.1980) and 42 Pa.Cons.Stat.Ann. § 5942 (Purdon) (1982); *Hammarley v. Superior Court,* 89 Cal. App.3d 388, 153 Cal.Rptr. 608 (1979) and Cal.Evid.Code § 1070 (West Supp.1983); *Lightman v. State,* 15 Md.App. 713, 294 A.2d 149, aff'd, 266 Md. 550, 295 A.2d 212 (1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1922, 36 L.Ed.2d 414 (1973) and Md.Cts. & Jud.Proc.Code Ann. § 9–112 (1980).

■ The decision of the Court of Appeals is reversed. Plaintiffs have acknowledged that they cannot meet the requirements of subsections (A), (B) and (C) of T.C.A. § 24–1–108(c)(2) and therefore plaintiffs' divestiture application will be dismissed. Costs are adjudged against plaintiffs.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.