ARNOLD, Justice, Special Supreme Court,
dissenting.
This Court has been appointed by the Governor to decide the case of Delaney v. Thompson, et al., in which the plaintiff challenges the constitutionality of the uniquely statutory merit selection system for appellate judges called the Tennessee Plan. Rather than contend with the constitutional issues, the majority, deciding this case by statutory construction, utilizes a construction which reflects neither the meaning of the statute nor the positions of the parties. In doing so, the majority opinion neither clarifies issues of importance to the electorate and judiciary, nor discourages future litigation on the same issues.
Instead of analyzing the issues presented, (whether the Tennessee Plan imposes unconstitutional qualifications on candidates and whether a “retention” election constitutes an “election” as contemplated in the constitution, among others), the majority opinion bases its holding on a determination that the plaintiff, the attorney general, the trial court, and the Special Court of Appeals, have misread the statute. The opinion holds that the Tennessee Plan mandated an election on August 6, 1998, pursuant to general election laws, for the position vacated by Judge Todd. *862 It rests its conclusion on the “plain” language of the statute. Supra at 860.
In response to the assertion of the majority opinion that it is relying on the plain and obvious meaning of Tenn.Code Ann. § § 17-4-115 and 17-4-116, I must agree with the position of the parties in this ease. Section 17-4-115 (1994) provides as follows:
(a)(1) When any incumbent appellate court judge, whether appointed or elected under the provisions of this chapter or otherwise, seeks election or reelection for a full eight (8) year term, the judge shall file a written declaration of candidacy with the state election commission not later than twelve o’clock noon (12:00) prevailing time on the third Thursday in May immediately preceding the end of the term.
(2) If an appointment of a judge to a vacancy is made under this chapter after the second Thursday in May preceding the next regular August election recurring more than thirty (30) days after the vacancy, the qualifying date for election to fill the unexpired term is twelve o’clock noon (12:00) prevailing time on the first Thursday recurring one (1) full week after the appointment.
(b) If the declaration of candidacy is timely filed, only the name of the candidate, without party designation, shall be submitted to the electorate in Tennessee in the regular August election. Each county election commission of the state shall cause the following to be placed on the ballot:
Shall (Name of Candidate) be elected and retained in office as (Name of Office)? Yes... or No_
(c) Unless the judicial evaluation commission recommends the retention of a judge, the provisions of this part shall not be applicable. A political party may nominate a candidate and independent candidates may qualify under the general election law for the general election which shall be the regular August election. After a judge is elected under this subsection the provisions of this chapter concerning the evaluation and retention process shall again apply-
(d)(1) If a majority of those voting on the question vote in favor of reelecting the candidate, the candidate is duly elected to the office for a full eight (8) year term and given a certificate of election.
(2) If a majority or one half (⅛) of those voting on the question vote against retaining the candidate in office, then a vacancy exists as of September 1 after the regular August election. The governor shall fill the vacancy from a group of three (3) nominees submitted by the judicial selection commission as provided in § 17-4-112.
Section 17 — 4-116 (1994) provides:
(a) If an incumbent appellate court judge, whether appointed or elected, fails to file a declaration of candidacy for election to an unexpired term or to a full eight (8) year term within the prescribed time, or if such judge after the qualifying date withdraws as a candidate, a vacancy is created in the office at the expiration of the incumbent’s term effective September 1. In this event the judicial selection commission shall furnish a list of nominees for the office to the governor as provided by § 17-4-109. From such list, the governor shall appoint a successor to fill the vacancy effective September 1. The appointment is subject to the action of the electorate in the next regular August election. The appointee shall file a declaration of candidacy and be voted on as provided in § § 17-4^114 and 17 — 4-115.
(b) If the vacancy occurs more than thirty (30) days before the regular August election preceding the end of the term, the appointee is subject to election as provided in § § 17-4-114 and 17-4-115.
(c)(1) If a majority of those voting on the question vote in favor of electing the candidate, the candidate is duly elected to the office for the remainder of the unexpired term or a full eight (8) year term, as the case may be, beginning September 1, and the candidate shall be given a certificate of election.
(2) If a majority or one half (½) of those voting on the question vote against retaining the candidate in office, then the candidate may not take office on September 1, and a vacancy exists as of September 1 *863 after the regular August election. The governor shall fill the vacancy from a group of three (3) nominees submitted by the judicial selection commission as provided in § 17-4-112.
(d) If the vacancy occurs less than thirty-one (31) days before the regular August election, the appointee will not be voted on in such election and will take office on September 1. The term of office will be as provided in § 17-4-112(b).
It is clear that Tenn.Code Ann. § 17-4-115, with all its subsections, applies to an “incumbent appellate court judge seek[ing] election or reelection for a full eight (8) year term.” Tenn.Code Ann. § 17-4-115(a). Under subsection 17-4-115(c), the ballot is opened to other candidates only when the incumbent judge does not receive a positive evaluation by the judicial evaluation commission and yet “seeks” election. On the other hand, section 17-4-116 clearly applies when an incumbent appellate court judge does not seek reelection. When an incumbent appellate court judge does not file a declaration of candidacy, and is in effect retiring at the end of his or her term, such as Judge Todd did, this section provides that the governor shall fill the vacancy by appointment. Tenn.Code Ann. § 17-4-116(a).
The majority opinion asserts that this natural reading of subsection 17-4-116(a) should not be followed because such a reading renders subsection 17-4-115(c) “meaningless,” and, in a case such as the one before us, creates uncertainty as to the election, a result unintended by the legislature. Supra at 860-861.
Subsection 17-4-115(c) is not meaningless if the actual meaning of this subsection is that a general election is only triggered when an incumbent appellate judge receives a negative evaluation' and files a declaration of candidacy. Allowing other candidates to qualify when a vacancy is created by an unevaluated or negatively evaluated incumbent retiring judge, is clearly not within the interpretation of this subsection. This subsection is only rendered meaningless by the majority’s interpretation that a failure to evaluate automatically results in a general election even if the judge decides not to seek reelection and instead wants to retire at the end of the term. Tenn.Code Ann. § 17-4-116(a) certainly allows such a vacancy to be filled by appointment. When subsections 17-4-115(c) and 17-44L16(a) are construed together, there is no room for the majority’s interpretation that an election under the general election laws is triggered when an incumbent appellate judge,even though not running for reelection, fails to receive an evaluation.
The majority opinion correctly notes that based on subsections 17-4-115(c) and 17-4-116(a), where an incumbent judge does not receive a positive evaluation, it is unsettled “until the expiration of the qualifying deadline for the election,” whether there will be an election or vacancy to be filled by the governor. To avoid this uncertainty, the majority opinion holds that section 17-4-116(a) is limited to vacancies created by a retiring judge “whose retention has been recommended by the Commission.” Supra at 860-861. The implication is that the statute should have provided a mechanism for an incumbent judge to conclusively announce his or her intention to retire from the bench prior to the qualifying deadline; however, the absence of such a mechanism does not justify a conclusion that the legislature did not mean what it enacted. “[If the legislative intent] is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the judges are not at liberty, on consideration of policy or hardship, to depart from the words of the statute....” Carson Creek Resorts v. Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn.1993)(quoting Austin v. Memphis Publishing Co., 655 S.W.2d 146,148 (Tenn.1983)). Section 17-4-116(a) expressly allows the governor to fill vacancies created by a judge’s retirement. This Court is not at liberty “to depart from the words of the statute.”
Interpreting the statute as the parties have assumed, not only gives the language its “natural and ordinary meaning,”[1] it also avoids the erratic result of having the meth *864 od of filling a vacancy created by retirement, depend upon the evaluation of the retiree. Under the majority’s interpretation, the Tennessee Plan would allow the governor to fill a vacancy created by the retirement of a judge who had received a positive evaluation, but require an election if, as in this ease, the retiring judge had not received a positive evaluation. No matter what the parties’ views on the constitutionality of the Tennessee Plan, all agree that it presents a system of filling vacancies based on the merit of the proposed judge, rather than that of a prior judge.
By deciding this case as it has, the majority opinion fails to address the issues challenging the constitutionality of the Tennessee Plan. It is these constitutional issues on which this Special Court should fully deliberate and enter findings supported by legal analysis, so that the opinion rendered may guide the course of legislation and minimize, rather than spark, further litigation.
For the foregoing reasons, I respectfully dissent.
JEANIE M. TODD, J., Special Supreme Court, concurs.

. "The most basic rule of statutory construction is to ascertain and give effect to the intention and puipose of the legislature. Worrail v. Kroger Co., 545 S.W.2d 736 (Tenn.1977). Legislative intent *864 or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. National Gas Distributors, Inc. v. State, 804 S.W.2d 66 (Tenn.1991)." Carson Creek Resorts v. Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn.1993).