# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 24, 2017 Session

## STATE OF TENNESSEE v. NORMAN EUGENE CLARK

### Appeal from the Criminal Court for Knox County
No. 103548     Steven W. Sword, Judge

_____

### No. E2016-01629-COA-R3-CV
_____

The State of Tennessee ("the State") attempted to divest Dateline NBC and NBCUniversal News Group of protection provided under Tenn. Code Ann. § 24-1-208, the press shield law. The Criminal Court for Knox County ("the Trial Court") found and held that the State had failed to meet its burden under Tenn. Code Ann. § 24-1-208 and denied the State's motion to divest. The State appeals. We find and hold that the State failed to prove by clear and convincing evidence both that "the information sought cannot reasonably be obtained by alternative means," and that there is "a compelling and overriding public interest of the people of the state of Tennessee in the information." Tenn. Code Ann. §§ 24-1-208(c)(2)(B) and (c)(2)(C). We affirm the judgment of the Trial Court denying the State's motion to divest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J.M.S. and JOHN W. MCCLARTY, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Jennifer L. Smith, Associate Solicitor General; Sarah K. Campbell, Special Assistant to the Solicitor General and the Attorney General; and Sara Beth Myers, Assistant Attorney General for the appellant, the State of Tennessee.

Richard L. Hollow, Knoxville, Tennessee; and Erik Christopher Bierbauer, New York, New York, for the appellees, Andrea Canning, Tim Beacham, and the Custodian of Records for Dateline NBC and NBCUniversal News Group.

# OPINION

## Background

The State sought to obtain an unedited copy of a videotaped interview of Norman Eugene Clark ("Clark") conducted by Andrea Canning ("Canning") and Tim Beacham ("Beacham"), employees of Dateline NBC ("Dateline") and NBCUniversal News Group.[1] This interview was conducted shortly after Clark had been tried for two counts of first degree murder and two counts of felony murder in connection with the murder of his girlfriend and their unborn child. The trial resulted in a mistrial. The Dateline interview was conducted prior to the State announcing its decision to retry Clark. To date, the interview has not been aired.

After announcing its intent to retry Clark, the State filed a Petition for Certificate in Accordance with Uniform Law to Secure the Attendance of Witnesses From Within or Without a State in Criminal Proceedings seeking to have the State of New York issue summonses to Canning and Beacham and the Custodian of Records for Dateline NBC and NBCUniversal News Group, ordering them to testify and to produce the entire unedited video recording of the interview of Clark conducted by Dateline. The Trial Court issued a certificate to be presented to the Supreme Court of the State of New York: Criminal Term where Canning, Beacham, and the Custodian of Records were to be found. The parties appeared before the Supreme Court of New York. The Supreme Court of New York did not rule upon the issue, but instead directed the parties to appear in Tennessee and assert their rights under the Tennessee press shield law.

Canning, Beacham, and the Custodian of Records then filed in Tennessee a Motion to Quash all subpoenas or summonses compelling their testimony and the production of the video recording of Dateline's interview of Clark. The State filed a motion to divest Canning, Beacham, and the Custodian of Records of the protection of the Tennessee and New York press shield laws.

The Trial Court held a hearing and received evidence on the motion to quash and the motion to divest. Sean McDermott ("McDermott"), Assistant District Attorney and Public Information Officer for the Knox County District Attorney General's Office, testified at the hearing.[2] McDermott testified that the case against Clark was circumstantial only. He stated: "There was no direct physical evidence linking Mr. Clark to the scene but for fingerprints on the television that were retrieved by officers. But the

---

[1] At times in this Opinion for ease of reference only we refer simply to Dateline rather than listing out Canning, Beacham, and the Custodian of Records for Dateline NBC and NBCUniversal News Group.

[2] McDermott was not the prosecuting attorney in the criminal case against Clark, but he did 'follow' the case.

2

circumstantial nature of the case was something that was discussed within the office and it was a large focus of the trial itself." McDermott explained that the first trial against Clark resulted in a mistrial due to a hung jury.

McDermott testified that he received a telephone call from Beacham, who was a producer at Dateline, shortly after the trial asking for an interview. McDermott explained to Beacham that the case still was pending, the State had not yet made a decision about whether to retry Clark, and the State could not comment on pending litigation.

A few months later, McDermott received another telephone call from Beacham who stated that Dateline had interviewed Clark, Clark's attorney, and several other people, but that the "story at that point was one sided." Beacham again requested to interview the prosecution or law enforcement personnel about the case. McDermott stated: "He wanted to give the State an opportunity to present its side of the story." McDermott again told Beacham that they could not comment and also told him that they had a duty to discourage law enforcement personnel from making statements that the prosecutor could not make. McDermott testified that he asked Beacham for a copy of the interview with Clark, and Beacham declined to provide one. Later that same day, McDermott received a voice mail from Beacham stating that if the State decided not to retry Clark then Dateline would air what they had, and if the State did decide to retry Clark then Dateline would wait until after the second trial before airing any portion of the interview.

Approximately one month later, the State announced its decision to retry Clark. Dateline sent a producer, Mason Scherer ("Scherer"), to cover the announcement. After the parties left court, Scherer approached McDermott and asked to interview someone from the State. McDermott again declined because the case was pending. He asked Scherer some questions about Dateline interviews, and Scherer told him that the interviews are not confidential and that the interview with Clark specifically was not confidential. Scherer told McDermott that no confidentiality agreement was signed when Clark was interviewed. Scherer also told McDermott that Clark was interviewed by Canning in the presence of producer Beacham. McDermott again asked for a copy of the interview of Clark, and Scherer told McDermott he did not have the authority to release the interview.

McDermott then mailed a letter to the Editor in Chief of Dateline requesting a copy of the videotape of Clark's interview. This letter was returned as undeliverable. McDermott then mailed a letter to Executive Producer David Corvo requesting a copy of the video. In return, McDermott received a fax, and later a copy by mail, of a letter from Beth Lobel, Senior Vice President for NBCUniversal and counsel for Dateline NBC declining the request. McDermott testified that he then searched Dateline NBC's

3

website, Canning's and Scherer's Twitter feeds, and the internet to see if he could find anything with regard to the Dateline interview of Clark, but was unable to locate anything.

McDermott admitted that he does not know the contents of the Dateline interview of Clark. He also admitted that Clark was interviewed by police twice and that those interviews were recorded. The first recording was of the interview of Clark conducted in a police cruiser shortly after the murders, and it was introduced by the State at Clark's trial.[3] The second recording was a video of the police interview of Clark taken later at the Safety Building, and it was not introduced at the trial. When asked, McDermott agreed that the video[4] would have shown Clark's demeanor during the interview. McDermott also admitted that Clark attended and sat through the trial. McDermott admitted that he has no reason to believe that Clark admitted to guilt during the Dateline interview.

After the hearing, the Trial Court entered its detailed Order Regarding Motion to Quash and Motion to Divest on July 7, 2016, denying both motions after finding and holding, *inter alia*:

> The certificate issued by this court to the State of New York specifically stated in paragraph 11 that the requested parties may raise any applicable privilege claim in this court *after* the summonses had been issued. No such summonses have been issued by the State of New York. Thus, Dateline is premature on their motion to quash. There is nothing to quash. The actual procedural standing for Dateline is in the nature of a motion for this court to rescind its previous certificate under the uniform law for witnesses based on journalistic privilege. Since no process has been issued by the State of New York and Dateline is asserting their rights under Tennessee law, this court is of the opinion that only Tennessee law applies in this situation.

## STANDARD

Under Tennessee law, media organizations, such as Dateline, and their personnel are afforded protections of the information they gather during the course of their work. *See* TCA 24-1-208. The Tennessee Legislature determined that a

---

[3] McDermott was unsure of whether the recording of the interview of Clark conducted in the police cruiser captured video as well as audio. A review of the record from the criminal trial reveals that this recording was both a video and an audio recording.

[4] As noted, although McDermott was not certain of whether both police interviews were videotaped, the record from the criminal trial reveals that both police interviews of Clark were videotaped.

court *shall not* require the media to disclose such information to any court, grand jury, or agency. The starting point is that the information is unobtainable. (This is the right that Dateline now asserts regarding the requested materials.) However, the legislature did provide an exception to this general prohibition. The State has applied to this court for an order divesting Dateline of the protection provided under the statute. Such an order may only be granted if the court determines by clear and convincing evidence that the State has passed a three prong (elsewhere referred to as prerequisites) test. Those three prongs are:

(A) There is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law;
(B) The person has demonstrated that the information sought cannot reasonably be obtained by alternative means; and
(C) The person has demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information.

TCA 24-1-208(c)(2). The court will now examine these three prongs of the test.

Clearly Relevant

The first prong requires that the State show there is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law. There is no question that the requested parties have information. Dateline, through representatives, have [sic] informed the State of Tennessee that the defendant in the underlying cause, Norman Clark, gave an interview accounting his side of the case after the first trial was concluded. Furthermore, Dateline has indicated that the interview was recorded by video. The State acknowledges that it does not know the contents of this interview. They argue that it does not matter what Mr. Clark said. Any statement by a defendant would be admissible regardless of what he said if the State wishes to introduce it. The court does not disagree, to an extent. The statement would not be inadmissible pursuant to the hearsay rule. See Rule 803(1.2) of the Tennessee Rules of Evidence. However, there may be other bases to exclude the statement depending on the content of the statement.

However, the relevant question at this point is not one of admissibility, but rather whether the information possessed by Dateline through its work is clearly relevant to a specific probable violation of law. There is no doubt in this case that

5

there has been a specific violation of law. Ms. Brittany Eldridge and her baby have obviously been murdered by someone. Mr. Clark has been indicted for this offense. Relevant evidence is evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (emphasis added) See Rule 401 TRE. Relevance is a very low standard.

The State's position is that even if Mr. Clark made no apparent incriminating statement during the interview, the fact that Mr. Clark gave an interview in the first place and how he acted during that interview would be relevant to the charge of first degree murder. In this specific case, the court agrees with the State. The State's theory of the case is that Mr. Clark had motive to kill Ms. Eldridge and her baby because he believed the birth of the child would disrupt his lifestyle. More importantly, a key piece of evidence in this case was the location of Mr. Clark's cell phone during the time frame of the crime. According to the State's witnesses, scientific evidence demonstrates that Mr. Clark's statement to the police as to his whereabouts during the crime was a lie. Therefore, any statements Mr. Clark has made, or may make in the future, would be clearly and highly relevant to test his credibility in his denials to the police. This includes his demeanor, facial expressions, attitude, and tone of voice during the statement.

\* \* \*

This court finds that the State has established that there are more than reasonable grounds for suspicion that the information sought is clearly relevant to the murder of Brittany Eldridge and her unborn baby.

Cannot Reasonably be Obtained by Alternative Means

The second prong of the test requires that the State demonstrate the information sought cannot be reasonably obtained by alternative means. Dateline argues that the State currently possesses other interviews of Mr. Clark regarding the murder of Ms. Eldridge and her baby in the form of statements to the police. The State counters that every statement Mr. Clark has made is unique and is therefore unobtainable by other means. Furthermore, the interview with Dateline is the only one given by Mr. Clark after hearing all of the evidence.

\* \* \*

6

The difficult position the State finds itself in is that, as stated above, it does not know the specific content of the recorded interview, or any portion thereof. Although anything Mr. Clark said would be admissible through the State and probably relevant, in order to show that the information cannot be obtained by alternative means, the State must have more some [sic] proof as to the content of the interview and/or the nature of Mr. Clark's demeanor, attitude, mannerisms, etc. during the interview. If the court were to find that any statement given to media by a defendant in a criminal action was unique and therefore unobtainable by any other means, this second prong would have virtually no affect [sic] pursuant to the statute. Based upon the language of the statute, the court does not believe that the legislature intended such a result.

In *Gerbitz* v. *Curriden,* 738 S.W.2d 192 (Tenn. 1987), the Tennessee Supreme Court found that the requesting party had failed to establish the second prong of the test. In *Gerbitz,* the State was seeking information from media personnel regarding an interview obtained by a radio reporter from an individual who apparently confessed to a murder to the reporter. The Court of Appeals, after the initial hearing on the matter, found that the State failed to show by clear and convincing evidence that the information sought could not reasonably be obtained by alternative means. This was because the State failed to establish any specific offense, location of offense, identity of a victim, or venue. This finding was affirmed by the Supreme Court. *Id.* at 193.

Admittedly, the State has significantly more information in this case as outlined above and contained in the record of this cause. A more applicable case to the present issue is the unreported case, *State* v. *Shaffer,* 1990 WL 3347 (Tenn. Ct. App. 1990). The facts in *Shaffer* are similar to this case. In *Shaffer* an inmate actually confessed to a reporter that he committed murder. The inmate also confessed to the police. A portion of the interview was broadcast. The State sought the entirety of the interview with the reporter because it would be relevant to the prosecution of the case including issues of insanity, sentencing, and identifying the two victims. The trial court ruled, similar to this court's finding today, that anything the defendant said would be relevant. However, the trial court ordered an *in camera* review of the entire interview. The media personnel appealed. Although it set aside the trial court's order demanding an *in camera* review of the information, the Court of Appeals concurred with the trial court's finding that the State had failed to show that it could not obtain the information by alternative means, i.e. the second prong. *Id.*

In *Shaffer,* as in this case, the defendant was represented by counsel and was, therefore, unavailable to the State for an interview on the matters in question.

7

Furthermore, in both cases, only the victims and the perpetrators of the crime would know what happened since there were no eye witnesses and the victims are dead. Yet, the State did not know what was contained in the outtakes of the interview. Therefore, the trial court held that it could not "say that there is 'clear and convincing' proof whether the information can be obtained by alternative means since neither the Court nor the State knows what is contained in the material." *Id.*

Without having any information as to what mannerisms Mr. Clark displayed, or what he said, or how he looked when he said it, or what he didn't say, this court cannot find that there is clear and convincing evidence that the information sought is unobtainable by alternative means. All we know is that Mr. Clark "gave his side of the story". That information may very well already be in the possession of the State through his interviews with the police. His mannerisms during and after the trial may also be obtainable through other means of observation. The fact that he gave an interview after the first trial to the news media is likely to be obtainable by other means.

Therefore, the court finds that the State has failed to establish the second prong of the divestiture test by clear and convincing evidence. To demand that Dateline surrender the recorded interview to the State so the State can see what is in it would simply be a fishing expedition prohibited by the statute.

Compelling and Overriding Interest of the Public

Although the court has found that the State has failed on the second prong of the test and that there is no further need to evaluate the third prong, the court will none-the-less make a brief comment on this last prong. The lack of any information as to what was said or done during the interview, as cited above, also leads this court to conclude that the State has failed to establish by clear and convincing evidence the third prong. If there was evidence that Mr. Clark gave a confession, made an admission against interests, or simply contradicted his previous statements to the police in some material way that would be relevant to guilt, the court may very well find that the State would have a compelling interest in this information since that would be significantly contrary to the evidence that was presented during the first trial. The public's interest in bringing justice to homicide victims and setting forth truth is indeed great.

However, at this point, evidence of such incriminating statement or acts is nonexistent. The law does not allow the court to engage in such speculation or to conduct further inquiry. See *Shaffer*. The court would note that Mr. Clark has no claim of confidentiality in his statements to Dateline; nor does Dateline assert

such claim. If Dateline wanted to, they could give the State the entire interview and testify in court as to what was said by Mr. Clark. I would think that if any person possessed such highly relevant and significant information such as a confession to a double murder that they would feel morally compelled to disclose it. That is a matter for the conscience of those individuals. Absent a showing that such a confession exists, this court cannot, and will not, compel such disclosure under the circumstances of this case.

(footnotes omitted).

The State appeals the Trial Court's refusal to divest Dateline of its privilege. Clark's retrial was scheduled to begin on February 27, 2017. By order entered November 1, 2016, this Court expedited review of the State's appeal. After oral argument on this case, this Court was notified that Clark's retrial has been reset for September of 2017.

**Discussion**

Although not stated exactly as such, the State raises one issue on appeal: whether the Trial Court erred in finding and holding that the State failed to meet its burden to divest Dateline of protection provided under Tenn. Code Ann. § 24-1-208. In pertinent part, Tenn. Code Ann. § 24-1-208 provides:

> **24-1-208. Persons gathering information for publication or broadcast – Disclosure.** – (a) A person engaged in gathering information for publication or broadcast connnected with or employed by the news media or press, or who is independently engaged in gathering information for publication or broadcast, shall not be required by a court, a grand jury, the general assembly, or any administrative body, to disclose before the general assembly or any Tennessee court, grand jury, agency, department, or commission any information or the source of any information procured for publication or broadcast.
>
> * * *
>
> (c)(1) Any person seeking information or the source thereof protected under this section may apply for an order divesting such protection. Such application shall be made to the judge of the court having jurisdiction over the hearing, action or other proceeding in which the information sought is pending.

(2) The application shall be granted only if the court after hearing the parties determines that the person seeking the information has shown by clear and convincing evidence that:

      (A) There is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law;

      (B) The person has demonstrated that the information sought cannot reasonably be obtained by alternative means; and

      (C) The person has demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information.

(3)(A) Any order of the trial court may be appealed to the court of appeals in the same manner as other civil cases. The court of appeals shall make an independent determination of the applicability of the standards in this subsection to the facts in the record and shall not accord a presumption of correctness to the trial court's findings. . . .

Tenn. Code Ann. § 24-1-208 (2000).

It is the "information procured for publication or broadcast" that is protected by statute. Tenn. Code Ann. § 24-1-208(a) (2000). Dateline asserted its privilege under Tenn. Code Ann. § 24-1-208. The State filed a motion seeking to divest Dateline of the privilege under Tenn. Code Ann. § 24-1-208(c). The parties agree that the State proved the first prong of the test for divestment, section (c)(2)(A) of the statute.[5] They disagree as to whether the State proved the second and third prongs of the test, sections (c)(2)(B) and (c)(2)(C).

With regard to the second prong of the test, section (c)(2)(B), the State asserts that it attempted to obtain a copy of the videotape of the Dateline interview several times, but the requests made to Dateline were denied. The State also asserts that because Dateline has announced that it does not plan to air the interview prior to the retrial, the State cannot obtain this interview by any other means.

The fact that the State may not be able to obtain the videotape of this specific Dateline interview, however, does not automatically lead to the conclusion that the State cannot obtain *the information contained in the interview* by alternative means. It is the "information procured for publication or broadcast" that is protected by statute. The Trial Court acknowledged that the State is in a difficult position because it does not know the

---

[5] Dateline agrees that the State proved section (c)(2)(A), but disagrees with the Trial Court's decision to apply a preponderance of the evidence standard when analyzing this section. We note, however, that in its judgment the Trial Court noted in a footnote that it also found the proof with regard to section (c)(2)(A) to be clear and convincing.

specific content of the videotaped Dateline interview, and therefore, is unable to show that the information sought cannot be obtained through other means.

The State asserts, as we understand it, that every video statement made by a criminal defendant is unique and, therefore, not available through other means. We hold that the second prong of the test would be rendered meaningless as to protected information contained on a video of a criminal defendnat if we followed the State's line of reasoning. If the information contained on a video is considered unique no matter the actual content of the statement simply because it is on video, then by definition it cannot be obtained through any source other than the video itself.[6] Such a holding would render the language contained in section (c)(2)(B) mere surplus as to protected information contained on such a video as it would be unnecessary for the person, here the State, seeking to obtain a video to prove by clear and convincing evidence that the information sought could not be obtained through alternative means. Stated another way, the State could obtain the protected information contained on such a video just because the protected information was on video, rather in a reporter's notes for example. We do not believe that such a result was intended by our General Assembly.

The State argues that even though it does not know the specific contents of the Dateline videotape, the demeanor of Clark as shown on the videotape is important and relevant and cannot be obtained through other means. The record on appeal, however, shows that Clark was interviewed by police twice and that these interviews were videotaped. Thus, Clark's demeanor would be shown on those videotapes. Furthermore, Clark attended and sat through the trial, and the jury had the opportunity to observe his demeanor while the evidence against him was presented. It cannot be said that the State cannot obtain information about Clark's demeanor through other means. Further, adopting the State's position once again effectively would modify section (c)(2)(B) making it unnecessary for the person seeking such a video to prove by clear and convincing evidence that the protected information contained on the video could not be obtained through alternative means simply because it is a video showing the person's demeanor in that specific video.

In order to divest Dateline of its privilege under Tenn. Code Ann. § 24-1-208, the State had to produce clear and convincing evidence of all three prongs of section (c)(2) of the statute. As our Supreme Court has explained: "Clear and convincing evidence is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.' " *In re: The Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) (quoting *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). The State simply did not prove by clear and convincing evidence "that the information sought

---

[6] This reasoning would hold equally as well to any video statement of a party or even a witness in a civil suit.

11

cannot reasonably be obtained by alternative means." Tenn. Code Ann. § 24-1-208(c)(2)(B) (2000).

In its brief on appeal the State cites to cases from other states that it alleges support its argument with regard to section (c)(2)(B) of the statute. We find no reason, however, to resort to the law of another state. The number of Tennessee cases addressing Tenn. Code Ann. § 24-1-208 may be limited, but the gloss these cases have provided of the statute is clear and consistent. To date, no Tennessee case ultimately has held that it was proven that the press or media should be divested of its protection provided under Tenn. Code Ann. § 24-1-208.

The State argues that the decisions in *State ex rel. Gerbitz v. Curriden* and *State v. Shaffer*[7] refusing to divest the protection provided under Tenn. Code Ann. § 24-1-208 are distinguishable and should not control the result in the instant case. In *Gerbitz*, a radio announcer interviewed an alleged murderer and then was subpoenaed to appear before a Hamilton County grand jury to give testimony about that interview. *State ex rel. Gerbitz v. Curriden*, 738 S.W.2d 192, 193 (Tenn. 1987). The radio announcer refused to give testimony pursuant to the privilege contained in Tenn. Code Ann. § 24-1-208. *Id*. Our Supreme Court held that the radio announcer should not be divested of the privilege because the State Attorney General had failed to prove that the information sought could not reasonably be obtained through other means as "[t]here is no explanation of what information was sought . . ." or "what other efforts, if any, . . . had [been] made to determine the identity of the criminal offense, the offender himself, or the site of the offense. . . . No investigation or inquiry . . . from surrounding counties appears to have been made, nor has any check of prision or parole records been shown." *Id*.

The State argues that *Gerbitz* is distinguishable from the instant case because in the instant case the prosecutors "know the specific offense, location, and the identify of the victims . . . ." We agree that these facts make the instant case factually distinguishable from *Gerbitz*, but disagree that these distinguishing facts in any way show that the State has demonstrated that the information sought in this case cannot reasonably be obtained through another means.

In *State v. Shaffer*, a television news reporter interviewed James Shaffer who was in jail in Kentucky at the time. *State v. Shaffer*, No. 89-208-II, 1990 WL 3347, at *1 (Tenn. Ct. App. 1990), *no appl. perm. appeal filed*. During that interview, a small portion of which was aired on television, Shaffer confessed to committing two murders.[8] *Id*. at**1-2. At about the same time that this interview was given, Shaffer was

---

[7] These are not the only cases addressing Tenn. Code Ann. § 24-1-208, but they are the most relevant to the issues involved in the instant case.

[8] Shaffer was in jail for a separate crime.

12

interviewed by police, and he also confessed to the murders during the police interview. *Id*. The State sought to obtain the videotape of the entire interview conducted by the television news reporter, including the un-aired portions, and the news station claimed the privilege under Tenn. Code Ann. § 24-1-208. *Id*. The trial court in *Shaffer* found that the State had not proven section (c)(2)(B) of the statute, but ordered the videotape to be produced for inspection *in camera*. *Id*. at *7. This Court reversed the trial court stating:

> To allow the trial court to conduct an *in camera* review under the circumstances here would, in essence, allow the court to conduct a "fishing expedition" in an attempt to aid the State in finding "clear and convincing" evidence. Under the statute, it is incumbent upon the person or entity wanting the information to show that it is entitled to divest the newsperson of protection. The State, as the court found, did not provide that clear and convincing evidence in regard to all three prerequisites, and it is not the function of the court under the statute to act as an arm of the State.

*Id*. at *8.

In its brief on appeal, the State asserts that seeking the Dateline videotape "is hardly a fishing expedition." The State asserts that it "seeks a copy of one specific interview that it knows contains statements by Norman Clark concerning his prosecution for first-degree murder." This, however, is not much different from the factual scenario at play in *Shaffer* wherein the State sought a specific videotape of an interview of Shaffer conducted by a reporter during which Shaffer actually confessed to committing two murders. In both *Shaffer* and the instant case, the State knew who the interviewee was and what the general subject discussed in the interview concerned. In fact, in *Shaffer*, the State was aware that Shaffer had confessed to the murders because a portion of the interview had been aired. *Id*. at 1. In the case now before us, the State admits that it does not know what Clark said during the Dateline interview and has no reason to believe that Clark confessed to murdering his girlfriend and unborn child. In its July 7, 2016 order, the Trial Court stated that: "To demand that Dateline surrender the recorded interview to the State so the State can see what is in it would simply be a fishing expedition prohibited by the statute." We agree.

The Trial Court also found that the State had not "demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information" contained in the Dateline interview. Tenn. Code Ann. § 24-1-208(c)(2)(C) (2000). In its brief on appeal, the State asserts that it "has an obvious and compelling interest in protecting its people from a murderer . . ." and that it has "a compelling safety interest that concerns the people of this State." The State argues that the third prong of the test, section (c)(2)(C) of the statute is satisfied due to the fact that Clark was charged with

13

multiple murders, and the State has an interest in prosecuting such crimes for the benefit of the people of the State.

While we disagree neither with the State that it has an interest in prosecuting people charged with crimes nor the serious nature of the crimes with which Clark has been charged, we do disagree with the State, as did the Trial Court, that the State has "demonstrated a compelling and overriding public interest of the people of the state of Tennessee *in the information*" *contained in the Dateline interview.* Tenn. Code Ann. § 24-1-208(c)(2)(C) (2000) (emphasis added). The State is free to prosecute Clark for the crimes he has been charged with, and indeed already has tried Clark for these charges, without need of the information contained in this Dateline interview. While it might benefit the State's case against Clark to have the Dateline interview, this is not the standard that must be satisfied in order to divest Dateline of its privilege under Tenn. Code Ann. § 24-1-208.

Furthermore, if we were to hold as the State requests and order divestment based upon the serious nature of the crimes Clark has been charged with, this likely would lead to section (c)(2)(C) being rendered superfluous in cases involving serious criminal matters. Where would the line be drawn? What if Clark were charged with a single murder as opposed to a double murder? What if Clark had been charged with another serious crime that did not involve murder? Would that be deemed sufficient to divest the media of its statutory protection? We simply do not believe that our General Assembly intended a result such as this.

To hold that the third prong of the test for divestment is automatically satisfied if the "specific probable violation of law" is murder, would be to read terms into the statute that do not appear within it.[9] Tenn. Code Ann. § 24-1-208(c)(2)(A) (2000). This we will not do. The State's interest in this case is neither more nor less than its interest in every murder case. Such a holding as the State requests would be a court revision of the statute effectively amending section (c)(2)(C). We will not do as requested by the State as it is the prerogative of the General Assembly to make such a policy decision, and it has done so by enacting the statute. The statute requires a showing by clear and convincing evidence "demonstrat[ing] a compelling and overriding public interest of the people of the state of Tennessee in the information" sought before the media will be divested of its privilege under Tenn. Code Ann. § 24-1-208(c)(2)(C) (2000). We find, as did the Trial Court, that the State failed to make such a showing in this case.

---

[9] Refer to *Austin v. Memphis Pub'l Co.* in which our Supreme Court discussed Tenn. Code Ann. § 24-1-208 and stated that "the Court may look only to the four corners of the statute as a general rule," and held that the clear and unambiguous language of the statute "did not qualify 'any information' or the 'source of any information' with the word 'confidential.' " *Austin v. Memphis Pub'l Co.*, 655 S.W.2d 146, 148-49 (Tenn. 1983) (quoting *Pless v. Franks*, 308 S.W.2d 402, 404 (Tenn. 1957)).

14

We acknowledge that the test for a party seeking divestment pursuant to Tenn. Code Ann. § 24-1-208(c)(2) presents a challenging burden to surmount. This, however, clearly is the result that our General Assembly intended when it enacted Tenn. Code Ann. § 24-1-208 and provided protection to the media and press. If the protection provided by Tenn. Code Ann. § 24-1-208 is to be diminished, it must be done by our General Assembly and not the courts. In the case now before us, the State failed to prove by clear and convincing evidence that "the information sought cannot reasonably be obtained by alternative means," and failed to show by clear and convincing evidence that the State has demonstrated "a compelling and overriding public interest of the people of the state of Tennessee in the information." Tenn. Code Ann. § 24-1-208(c)(2) (2000). Given all this, we find no error in the Trial Court's order refusing to divest Dateline of its protection under Tenn. Code Ann. § 24-1-208.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, the State of Tennessee.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

15